Horner v. Fellows.

HORNER AND ADAMS, Administrators of WOODRUFF, v. FELLOWS.

|  1d  |  51  |
| 104  | 148  |

Douglass
|  1d  |  51  |
| 130  | 228  |

|  1d  |  51  |
| 135  | ¹382 |

Evidence of the statement of an agent, made nine months after he had sold property for his principal, that he knew at the time of the sale that it was good for nothing, is inadmissible to affect the rights of his principal.

Evidence that the vendor of property represented to the purchaser, at the sale, that it was good, without knowing it to be so, and that it proved to be bad, will not establish fraud in the contract of sale.   It must be further proved that the vendor *knew* such representation to be false when he made it.

Representations as to the quality of property, made by the vendor pending a negotiation for its sale, are merged in an express warranty of such quality, made by him on the consummation of the contract of sale which results from such negotiation; and, unless the purchaser can prove that such representations were known by the vendor to be false when he made them, and thus establish *fraud*, he must rely solely upon the warranty, for the remedy of any injury sustained in consequence of the falsehood of such representations.

The agent of W. sold a fanning mill to F. *representing that it was good, and would do a good business,* and took F.'s note for it, to which it was added, that the note was given for the mill which was warranted to be good and to do a good business, and that if it was not good, F. was to have the privilege of returning it within a

certain time, and W. was to furnish a new mill, in exchange, which should be good. In an action by W.'s administrators, on the note, *Held,* that unless it was shown that W. or his agent *knew* at the time of the sale that the *mill was not good,* F. was bound to return it according to the condition annexed to the note, before he could avail himself of any defect in the mill on his defence.

CASE certified to this Court by the Presiding Judge of Washtenaw Circuit Court, for the determination of questions reserved at the trial.

*E. W. Morgan,* for the plaintiffs.

*E. Lawrence,* for the defendant.

RANSOM, J.    This case was tried in the Washtenaw Circuit Court, on appeal from a justice of the peace.    The action was brought by the plaintiffs, as administrators of E. Woodruff, deceased, for the recovery of the amount claimed to be due upon the following note or contract made by the defendant:

$20.                                    *Lodi, Sept.* 8, 1837.

One year from the first day of January next, for value received, I promise to pay E. Woodruff or bearer, twenty dollars, with use.    The above note was given for a fanning mill, which was warranted to be good and to do good business.    If not good, the signer has the privilege of returning it to Woodruff's shop, in Plymouth, in the month of January next, at which place said Woodruff agrees to furnish a mill which shall be good, in exchange therefor.

*Festus A. Fellows.*

To the declaration, which was in assumpsit upon this instrument, the defendant pleaded the general issue, set off, want of consideration, and that the note was fraudulently obtained.

On the trial, the defendant introduced evidence to prove that one Odell, who acted as the agent of Woodruff, in making the sale of the fanning mill mentioned in the note

Horner *v.* Fellows.

or contract, and for which the note was given, represented, at the time of the sale, *that the mill was good and would do a good business.*

He then offered to prove that, about nine months after the sale, Odell, being still the agent of Woodruff, stated to the defendant, that he, Odell, *knew*, at the time of the sale of the mill, that *it was good for nothing ;* which evidence, being objected to by the plaintiffs, was rejected by the court.

The defendant further proved that the mill was worthless, although Odell did not know whether it was good or not at the time of the sale ; that, in February, 1838, he returned it to the shop of Woodruff, who was absent, and the foreman of the shop offered him another mill in exchange, which, however, he did not take at that time ; nor did Woodruff accept the old mill on his return.

The court refused to charge the jury that if Odell, the agent of Woodruff, represented the mill *as good, not knowing whether it was good or not, and it turned out to be not good,* it was evidence of fraud in obtaining the note.

The court charged the jury that, unless Woodruff or his agent *knew the mill was not good,* the defendant was bound to return the same according to the condition of the note or contract, before he could avail himself of any defects in the mill as a defence to this action.

The jury found a verdict for the plaintiffs.

Upon this statement of facts, which is properly certified to this Court, the following questions arise :

1. Was the evidence offered by the defendant to prove the declarations of Odell, the agent of Woodruff, made subsequently to the sale of the mill and to the execution of the note given for it by the defendant, properly rejected by the court ?

We are clearly of the opinion that the evidence was properly rejected. The statements and declarations made

by an agent while he is contracting for his principal, within the scope of his authority, and having reference to the subject matter of such contract, constitute a part of the *res gestæ*, and may be given in evidence to affect his principal; but not what he says at another and subsequent period. His declarations are received, not as *admissions* of his principal, but as part of the *res gestæ*. *Haven* v. *Brown*, 7 Greenl. R. 424; *Leeds* v. *Marine Ins. Co. of Alexandria*, 2 Wheat. 380; *Fairlie* v. *Hastings*, 10 Ves. 123; *Westcott* v. *Bradford*, 3 Wash. C. C. R. 500; *Thallhimer* v. *Brinkerhoff*, 4 Wend. R. 394; 1 Esp. Cas. 375; 7 Serg. and Rawle R. 109; 2 Pick. R. 532.

2. Did the court err in refusing to instruct the jury that if Odell, the agent, represented the mill as *good not knowing it to be so,* and it proved to be *not good,* it was evidence of *fraud ?*

We think not. Whatever representations were made by Odell in relation to the quality of the mill, pending the negotiation, were merged in the written contract in which the negotiation resulted. The defendant chose to reduce those representations into an express warranty. Upon that he must rely, unless there was actual fraud in the sale. In *Culver* v. *Avery*, 7 Wend. R. 386, the court say: " Whatever is said, *in good faith*, in a treaty for a sale or purchase, is *merged* in the purchase itself, when consummated, and you cannot overhaul it, whether the representations were true or false; but it is otherwise if they were *known to be false* when made." So also, *Welsh* v. *Carter*, 1 Wend. R. 189.

3. Did the court err in charging the jury that, unless Woodruff or his agent *knew* the mill was not good, the defendant was bound to return it according to the condition of the note or contract, before he could avail himself of any defect in it, on his defence?

We think the court charged the jury correctly. *Hills*

v. *Bannister et al.* 8 Cowen 33, bears directly upon this point.   The action was upon a note given by the defendants, for a church bell.   The plaintiff, at the time of the sale, agreed in writing to warrant the bell not to crack for one year; and to re-cast it if it should crack within that time.   It was proved on the trial, that at the time of the purchase, Hills, the plaintiff, and one Hanks were in company ; that the bell cracked within the year, and that the defendants went to the place where Hanks had formerly kept his shop in Auburn, *to get it re-cast,* but he had left the country, and they could not find him.   In deciding the case, the court said : "It was provided that if there should be a breach of warranty, the defendants should be entitled to redress by having the bell re-cast.   Until there was a refusal to comply, there was no right of action in the defendants.   The evidence was insufficient to show that the persons warranting were in default.   For aught that appears, Hills was at his place of business, ready and willing to re-cast the bell ; and yet no application was made to him.   Damages for non-performance do not arise in such a case, until neglect or omission be shown, after a request to perform."

But in *Pinney* v. *Hall,* 1 Hill R. 90, the facts were almost identical with those of the present case, and the court remarked : "It is quite clear upon the evidence, that the plaintiffs were ready and willing to take back the first mill and furnish the defendant with another, in pursuance of the contract.   The defendant declined taking another.   The parties provided by the contract what should be done, in case the defendant should be dissatisfied with the mill.   He was to return it and take another.   That was his remedy.   He had no right to refuse taking another mill, and then insist on an abatement in the price agreed to be paid for the first."

In the case at bar, the defendant did not even return the

mill until after the time had elapsed within which, by the contract, he had a right to do so. The defendant's agreement to pay the contract price for it had become fixed and absolute. The plaintiff was then under no obligation to receive back the first mill and furnish the defendant with another, but had a right to insist upon the payment of the note. Nothing less than *actual fraud* in the sale, by the plaintiff or his agent, could defeat his recovery ; *that* the jury did not find upon the evidence.

Judgment should be entered upon the verdict.