FOSTER *v.* ROWLEY.

SALE—MISREPRESENTATION—RESCISSION OF CONTRACT—WAIVER.
The use of chattels by a purchaser thereof, for 30 days after he discovers the falsity of representations which induced the sale, constitutes a waiver of the right to rescind.

Error to Ingham; Wisner, J., presiding. Submitted April 22, 1896. Decided July 1, 1896.

*Assumpsit* by Seymour Foster against Louis E. Rowley for goods sold and delivered. From a judgment for plaintiff, defendant brings error. Affirmed.

*M. V. & R. A. Montgomery*, for appellant.

*Cahill & Ostrander*, for appellee.

PER CURIAM. In April, 1893, the defendant was appointed postmaster of Lansing, to succeed the plaintiff. After defendant's appointment, and shortly before taking possession, he had various conversations with plaintiff in which the subject of purchasing of the plaintiff the furniture then in the office was discussed. A new post office was in process of construction by the government. Some time thereafter a purchase price was agreed upon between the parties, at $206.25, $100 of which was paid down, and time given for the balance. This action is brought to recover the balance claimed to be due.

It appears that the postmasters, prior to that time, had been required to furnish, and had furnished, at their own expense, the furniture and equipments for the office, and the property had been passed down from one postmaster to another by purchase. The plaintiff represented to the defendant that this furniture was what was required for use, and that he could not very well get along without it in the office; that he had purchased it from his predecessor, and claimed to the defendant that it was only fair that he should buy it from him. Defendant objected to the purchase, as the new office was in process of erection, and he said he expected the government would furnish the new office. The plaintiff stated to him that he thought the government would not furnish the new office. The plaintiff testified:

"I said to him I didn't know; I had never worked in a first-class post office. I said I knew the government didn't furnish second-class offices; * * * that, when he should come to go into the new building, the office by that time would be a first-class office, and that I didn't know what the government would do with a first-class office; * * * and in the meantime he had got to have furniture to run his office until the new post office was done."

The plaintiff further testified that he told the defendant

he had recently been to Muskegon, and had called on the postmaster there, and been shown through the office; that the postmaster told him that the government would not furnish him with a penny's worth of furniture; that plaintiff had the impression, at the time he was talking with defendant, that Muskegon was a first-class office, and that he stated this fact to Mr. Rowley, with the honest belief that it was a first-class office; that, after some further negotiations, defendant took a list of the articles in the office, and wrote opposite the name of each article the price he was willing to pay for it; and that, when he came to an article he did not want, he struck it out, and finally remarked: "I think that is about right." Plaintiff testified, further, that he had since learned that the post office at Muskegon was not a first-class office. He was asked:

"So you did inadvertently state as facts things that did not exist as facts?
"*A.* Yes, sir.
"*Q.* And you stated those things for the purpose of inducing him to enter into this contract?
"*A.* Yes, sir; possibly."

The plaintiff admitted that the price asked was greater than the actual value of the property, taking it as a whole, but says he told defendant that the value consisted in its being just what he wanted in the proper place, and that it was worth something to him because of that, aside from the intrinsic value.

Defendant testified that plaintiff admitted to him that the property was not worth the price asked, but claimed that it was necessary for the working of the office; that he called plaintiff's attention to the fact that there was a new government building in process of construction, to be completed about January 1st, and that it seemed to him the government would put the furniture in, but plaintiff said that was not so; that, strange as it might appear, he knew the government did not furnish

110 MICH.—5.

the buildings. Defendant also stated what plaintiff told him about the post office at Muskegon, to the effect that the postmaster there told him that he had found out at his own expense that the government would not put the furniture in, and that he had been obliged to put it in himself; that, upon this statement of the plaintiff, he was induced to make the purchase, but that the furniture was not worth more than from $25 to $50. Defendant further testified, on cross-examination, that he went into the new post office the following April, and that he had used this old furniture, and used it 10 months after he found out that the plaintiff's statements were not true.

At the close of the testimony, defendant's counsel requested the court to charge the jury:

"1. Under the undisputed evidence, your verdict must be for defendant."

"4. If the contract in question was entered into between the parties because of the representation of Mr. Foster that the furniture would be needed by Mr. Rowley in furnishing the new post office, and Mr. Rowley, believing such representation, contracted to purchase the same, the promise was obtained by fraud, and the plaintiff cannot recover."

These requests were refused, and the court directed the jury substantially as follows:

"If you should find by a preponderance of the evidence that on the occasions which led up to the making of this agreement, and at the same time when it was finally consummated, Mr. Foster represented—not as an opinion, not giving it as his opinion, but asserting it to be a fact—that it was the policy of the government and its practice to require postmasters of this class to furnish the appliances for their offices, and if you find that he made that statement as a fact, and that it was relied upon and believed by Mr. Rowley, and that it was the main thing which induced him to enter into this contract, then whether Mr. Foster knew that it was true or not would be immaterial; it would amount in law to a fraud. * * * If you find that, within a reasonable time after it came to

his knowledge that false representations had been made to him, he tendered back this property, and sought thus to rescind the contract, and did not continue to use it, that would be a rescission; but I think a man cannot simply make an offer to return property, and then continue to use it, to his advantage, and have it operate as a rescission of the contract in law."

Certain other requests were given in the charge to the jury, which we do not deem it important to discuss here.

The testimony shows that, just prior to the commencement of this suit, the defendant notified the plaintiff that he would not keep the property, and plaintiff must take it away. This was not done, and defendant, as shown by his own testimony, continued to use it. It was the duty of defendant, as soon as he learned of the misstatements, to rescind the contract; and notice of such rescission must have been promptly given, and adhered to, in order to bind the parties thereto. The continued use of the property for some 30 days after he had learned the facts would be a waiver of the right of rescission, even though notice of such rescission had been given. *Hubbardston Lumber Co.* v. *Bates*, 31 Mich. 158; *Dunks* v. *Fuller*, 32 Mich. 242; *Campau* v. *Lafferty*, 50 Mich. 114; *Craig* v. *Bradley*, 26 Mich. 353; *Gridley* v. *Tobacco Co.*, 71 Mich. 528; *Beal* v. *Congdon*, 75 Mich. 77; *Dailey* v. *King*, 79 Mich. 568. While the court left the question of rescission to the jury, we think, under the defendant's own testimony, the court should have instructed them to find a verdict for the plaintiff. We think defendant's continued use of the property for 30 days after he learned of the alleged fraud amounted to a waiver of any intent to rescind the contract. *Marthinson* v. *Insurance Co.*, 64 Mich. 384; *Cobbs* v. *Fire Association*, 68 Mich. 466; *Peninsular Stove Co.* v. *Osmun*, 73 Mich. 570.

The judgment is affirmed.