HANGSTERFER *v.* SHAFER.

LEASE—RIGHT TO RENEW—ELECTION OF REMEDIES.

A tenant who has a right, at the expiration of his lease, to elect to renew the lease for four years, or terminate it and collect of the lessor 75 per cent. of the cost of the fixtures placed on the premises by him, cannot, after remaining in possession five months beyond the term, elect to terminate the lease and recover from the lessor for the fixtures.

Error to Wayne; Rohnert, J. Submitted January 29, 1902. (Docket No. 92.) Decided March 26, 1902.

*Assumpsit* by J. William Hangsterfer against Charles A. Shafer and Wilber S. Peck for a breach of the terms of a lease. From a judgment for defendants on verdict directed by the court, plaintiff brings error. Affirmed.

*Bowen, Douglas & Whiting*, for appellant.

*Alfred Lucking*, for appellee Shafer.

*ß*

MOORE, J.    This suit was brought in the circuit court.
A bill of particulars was filed, which stated, after the for-
mal heading:

"Take notice that the following is a bill of particulars
of the plaintiff's claim, for which suit is brought:
"The following articles of furniture, fixtures, including
soda fountain, purchased under the terms of contract sued
upon:

Soda fountain _____ $2,200 00
William Wright & Co., bill of fixtures _____ 791 20."

Then followed 20 other items for fixtures and equip-
ments connected with the soda fountain, the total of the
items being about $4,500.    The circuit judge directed a
verdict for the defendants.    The case is brought here by
writ of error.

The defendants stand in the place of the Mabley &
Goodfellow Company, who entered into an agreement
with the plaintiff, by the terms of which the soda fountain
and fixtures involved in this litigation were, by the plain-
tiff, put into the building known as the "Majestic Build-
ing" in Detroit.    A great many errors are assigned, but,
as we think one feature of the case disposes of it, we shall
refer only to that.    The agreement was dated February
26, 1897.    Those portions of it important to this discus-
sion read as follows:

"The first party shall furnish the second party with the
drawings and the description of the fixtures and fountain
necessary to place upon said premises, which fixtures and
fountain shall be suitable to the place, and in keeping with
the other fixtures in the portion of the Majestic Building
controlled by the first party as aforesaid, and said second
party shall cause said fixtures to be constructed and placed
upon said premises.    The cost of said designs and descrip-
tions shall be paid by the first party, and the cost of said
construction by the second party.    If this license should
not be renewed as hereinafter contemplated, by reason of
the first party refusing to renew the same, then said first
party shall buy said fixtures and fountain, and shall pay
the second party therefor the reasonable cost of said con-
struction, which, however, shall not exceed the actual cost

thereof. If the second party shall elect not to renew this license as herein contemplated, then the first party shall buy said fixtures and fountain, and shall pay the second party seventy-five per cent. of such reasonable cost of construction, which reasonable cost shall not exceed the actual cost. * * *

"This license shall begin on or about the first day of April, 1897, and continue only so long as its terms and stipulations, and each and every one of them, are fully and promptly complied with by the second party, and in such case from then until and including the tenth day of February, 1898. If, at the expiration of this license, the relation of the parties and the business conducted have been satisfactory, the second party shall have the right to renew this license on the same terms and conditions for the term of four-years from and after the last-mentioned date."

It is claimed by plaintiff that, before this suit was brought, such a condition arose as made it the duty of the defendants to take the soda fountain and fixtures, and to pay him for them. It will be observed that, under the terms of section 3 of the contract, the obligation of defendants to purchase the fountain and fixtures depends upon whether the license is renewed February 10, 1898, or not. The amount which defendants are to pay depends upon who elects not to renew it.

The testimony offered upon the part of the plaintiff tends to show that, before this agreement was entered into, it was represented to him by the manager of the Mabley & Goodfellow Company that eight floors of the building would be filled with goods, making a large department store controlled by that company; that, at the time the agreement was entered into, the Woodward-avenue entrance to the store was near where the fountain was to be placed, and no other fountain was to be placed upon any one of the eight floors; that, relying upon this, plaintiff was induced to put into the contract a guaranty to make sales amounting to $30,000 annually, and to pay the defendants 25 per cent. thereof; that defendants did not cause eight floors to be filled with goods, making a

large department store, but only two floors were occupied, and that, as a result, plaintiff's sales up to November were nowhere near reaching at the rate of $30,000 a year, and in November, because of the situation, the written contract was modified orally, by an agreement between the manager and the plaintiff that only 10 per cent. of the sales should be paid as rental, and the guaranty of sales to the amount of $30,000 should be eliminated; that, in pursuance of this contract, only 10 per cent. was paid until a new manager came on. What occurred after this is stated in the brief of counsel for plaintiff as follows:

"On February 10, 1898, Goodfellow left the management of the Mabley & Goodfellow Company, and Charles A. Shafer took his place as manager of the company in person. This was the date on which the right to renew the license accrued, but, owing to the confusion necessarily incident to a change of management in so large a concern, nothing was done in regard to a new lease for some time. Mr. May became manager February 20, 1898. On March 10th he called Mr. Hangsterfer to his office, where they had a talk, in which Mr. May, in substance, declared that Hangsterfer had broken his agreement in the lease, and asked him what he was going to do about it. Hangsterfer asserted his right to remain on payment to the defendants of 10 per cent. of the gross sales, irrespective of any guaranty of any specific amount of sales, and that the guaranty had been abrogated, and the percentage reduced to 10 per cent., by verbal agreement at the talk with Goodfellow, November 9, 1897. On April 5th, Hangsterfer, in a conversation with Shafer, said he would stay on the basis of 10 per cent. of sales, with no guaranty as to the total amount of the same. He continued in possession, paying rental at the rate of 10 per cent. of his gross sales. This continued until March 19, 1898, when Shafer began to retain all the money turned in to him, instead of 10 per cent. of it only. This continued for some two weeks and a half, when plaintiff retained the money received from sales, and made no settlements with the defendants whatever. On April 8, 1898, Hangsterfer was served with a written notice to quit the possession of the premises."

A like notice was served April 26th, 1898, and a third notice on July 16th. On July 13, 1898, for the first time,

plaintiff served notice upon the defendants of his election to vacate the premises, and that the defendant should pay him the cost of the fountain and fixtures, according to the terms of the agreement. In the meantime Mr. Shafer undertook to close the Woodward-avenue entrance, near the soda fountain, and open a door nearly to the other side of the building. On the 9th of April the plaintiff commenced a suit in chancery against Mr. Shafer, in which he set up the original agreement and its modification in November, and claimed it was then in force as modified, and he also set up the proposed alterations in the store, and also that defendants proposed to put in a soda fountain, and that he would be greatly injured if the proposed changes were permitted, and prayed for an injunction.

The defendant claimed Mr. Goodfellow was not authorized to change the written contract; that, as it was a contract for more than a year, under the statute of frauds it could not be legally changed except in writing; that, as Mr. Hangsterfer remained after February 10th, it was an election to renew for four years under the written contract unchanged; that defendant has always been ready to have him remain under the written contract, and that, if anything was necessary to be done to renew it, he was ready to do so, and had so notified the plaintiff; and that it was not until plaintiff refused to perform the contract that defendant sought to end it.

Without discussing these various claims or the interesting legal questions which arise, it is apparent that neither of the parties to the contract elected, on or about February 10th, to terminate it. The plaintiff insisted upon his right to continue his tenancy upon the terms of the contract as modified by the oral arrangement made in November; the defendants denied that the written contract had been modified, but conceded the right of plaintiff to remain under the original written contract. There is nothing to indicate that plaintiff sought to end his tenancy, and to give up his possession, until in July. On the con-

trary, he asserted his right to remain by the terms of his lease as modified. Taking any view of the case, it is clear the condition did not arise February 10th, or in a reasonable time thereafter, when plaintiff had a right to insist upon defendants' paying him for the fountain and fixtures. His right to require the defendants to take the fountain depended upon the terms of the written instrument. The time when the election might be made was fixed in the instrument. The plaintiff could not enter upon the second year of his tenancy, and continue therein for five months, insisting he was there as tenant, and at the same time hold the defendants liable for the value of the goods. If he has any remedy for what occurred, it is not in this action. See *Horner* v. *Fellows*, 1 Doug. 51; *Foster* v. *Rowley*, 110 Mich. 63 (67 N. W. 1077); *Thompson* v. *Howard*, 31 Mich. 309; *Merrill* v. *Wilson*, 66 Mich. 232 (33 N. W. 716); *Thomas* v. *Watt*, 104 Mich. 201 (62 N. W. 345).

Judgment is affirmed.

HOOKER, C. J., GRANT and MONTGOMERY, JJ., concurred. LONG, J., did not sit.