HOUSTON MOTOR CAR CO. v. BRASHEAR.

(Court of Civil Appeals of Texas. Galveston. May 7, 1913. Rehearing Denied June 5, 1913.)

1. SALES (§ 130*) — RESCISSION — ACTIONS — SUFFICIENCY OF EVIDENCE.

Evidence, in an action by the purchaser to rescind the sale of an automobile, *held* to show that plaintiff kept and used the car after he knew that its defects could or would not be cured by the seller.

[Ed. Note.—For other cases, see Sales, Cent. Dig. §§ 322–324; Dec. Dig. § 130.*]

2. SALES (§ 121*)—RESCISSION—WAIVER.

The purchaser of an automobile, by keeping and using it after he became satisfied that its defects could or would not be cured by the seller, waived his right to rescind the contract because of such defects, leaving as his only remedy an action for damages for breach of warranties.

[Ed. Note.—For other cases, see Sales, Cent. Dig. §§ 296–301; Dec. Dig. § 121.*]

3. SALES (§ 121*)—RESCISSION—FRAUD.

As a rule, one defrauded in a contract of sale must disaffirm at the earliest practical time after discovering the fraud, and if he retains and continues to use the property thereafter he waives his right to rescind, especially when he elects to affirm the contract by notifying the seller that he will hold him for damages for breach of warranty.

[Ed. Note.—For other cases, see Sales, Cent. Dig. §§ 291–301; Dec. Dig. § 121.*]

Appeal from District Court, Harris County; Norman G. Kittrell, Judge.

Action by S. H. Brashear against the Houston Motor Car Company. From a judgment for plaintiff, defendant appeals. Reversed and remanded.

C. P. & Otis K. Hamblen, of Houston, for appellant. A. L. Jackson, of Houston, for appellee.

PLEASANTS, C. J. This suit was brought by appellee against the appellant to rescind the sale of an automobile purchased by him from appellant, and to recover the money paid by him for said automobile, and in the alternative to recover, for alleged breach of warranties made by appellant in the sale of said automobile, the difference between the amount paid by appellee and the value of the automobile, which difference is alleged to be the sum of $2,000. In addition to a general denial the defendant specially pleaded that plaintiff had waived any right of rescission he may have had because of the length of time he had kept and used the automobile after he had discovered the alleged defects therein, and, further, that defendant had procured from the factory the necessary equipment for curing the alleged defects in the car and desired to remedy said defects, but plaintiff would not permit such work to be done, and defendant made tender of such equipment and offered to adjust same to the car and remove the cause of plaintiff's complaint free of charge to him. In answer to this plea of defendant plaintiff filed a supplemental petition, which alleges, in substance, that his delay in tendering the car back, and his continued use thereof, was induced by the repeated assurance of appellant that all defects in the car would be remedied. The cause was submitted to a jury upon special issues, and upon the return of the verdict judgment was rendered in favor of plaintiff for a rescission of the sale and recovery of the sum of $2,250, the amount paid by him for the car.

The contract for the purchase and sale of the automobile was executed on December 20, 1910. This contract contains this stipulation: "It is understood that this car may be rejected if after arrival it does not come up to representation in every detail." The car was delivered to plaintiff about January 10, 1911. After using it for a week without discovering any defects plaintiff, believing that the car was what it was warranted to be, paid defendant the agreed price of $2,250. About a month after this the car began to show defects, and plaintiff complained to defendant company, and was assured by the member of the company with whom he had made the trade, that there was nothing radically wrong with the machine, and that the defects would be remedied. Defendant was called upon, on various occasions prior to May 16, 1911, to remedy defects in the car, but never succeeded in making more than a temporary improvement in its operations. On May 16, 1911, plaintiff wrote defendant

a letter, which contains the following: "We have been assured by you from time to time that some little thing here or there was out of order, and that upon the same being adjusted or repaired the machine would then work all right. Having waited patiently some months for this condition to come about, we began several weeks ago to arrive at the conclusion that it was a failure, and that we have not received our money's worth. Developments since that time have confirmed that conclusion. * * * We are compelled to give you notice that we do not regard this auto as value received, and that we shall have to hold the company for the difference between the actual value and that of a car of the kind which we contracted for and had a right to expect." On May 29, 1911, appellee wrote appellant, complaining of the defects, and saying: "While I appreciate very much your curtesy in the matter, I do not expect the car to give satisfaction." On June 1, 1911, appellee wrote appellant, making complaints, and saying: "I have made up my mind to bring suit for the damage which we have suffered for having paid you $2,250 for this car when apparently it is not worth one-fourth of that figure." On June 10th appellee wrote appellant a post card, asking appellant to reply to his letter of June 1st. On June 12th appellant replied, stating that it had ordered some equipment from the factory with which to adjust the trouble, and that when same arrived a representative of the factory, who would be in town, would put same in shape. On June 28th appellee wrote appellant in answer to the foregoing letter, in which appellee mentioned appellant's statement that it had sent to the factory for the equipment, but asserting that there were other complaints that appellant did not refer to it in its letter, and saying: "As you have before admitted, there are other defects which should be made good, and I do not intend to drop the matter until they have been." In said letter last referred to appellee said: "The chain guards have been replaced or repaired, as contemplated by you in your letter, but I have no idea that it will be satisfactory." There was no offer by appellee to return the car until July 4, 1911. Appellant then declined to accept the car and return the purchase price, and on July 5, 1911, this suit was filed. On July 6th appellant wrote appellee that the factory had advised appellant that new chain fasteners had been shipped which would remedy the defect in the car, and that the factory representative had arrived and would take the matter up with him. Appellee declined to furnish the car for further experiments of this kind. On July 11th appellant again informed appellee that the necessary equipment had arrived and requested that it be permitted to place same on the car. During the six months that appellee kept and used the car he ran it 3,914 miles. It was also shown that while in use by appellee one of the

wheels of the car and one of the battery jars were broken, but the wheel had been repaired and the jar replaced by appellee or at his cost.

[1, 2] We think it clear from this evidence that appellee, by keeping and using the car after he knew or became satisfied that its defects could or would not be cured by the appellant, waived his right to rescind the contract, and his only remedy is to recover damages for breach of the warranties in the contract of sale. It cannot be said that he was induced to keep and use the car by the assurance of appellant that its defects would be remedied, when there is nothing in the evidence to indicate that he ever contemplated or desired, prior to July 4, 1911, a rescission of the sale. He made no offer to rescind prior to that time, but his effort was to get the defects remedied, and this appellant was trying to accomplish. The letters of May 16th and June 1st, before mentioned, show that appellee did not then intend to rescind the contract, though he knew or believed that the defects would not be remedied. How can it be said that appellee was induced by appellant's promises and assurances not to do a thing which his own testimony and his letters show he did not contemplate or intend doing? In these letters he notifies appellant, not that he will rescind the contract, but that he will sue for damages. There is no rule of law that will permit appellee, after reaching this conclusion and so notifying appellant, to keep and use the car for six weeks longer and then change his mind and require appellant to take the car back and return him the money paid for it.

[3] The general rule is that a defrauded party must disaffirm the fraudulent contract at the earliest practicable time after the discovery of the fraud; and, if a buyer retains an article and continues to use it after discovering the fraud that induces its purchase, he waives the right to rescind the contract. If the retention and use of the article by the buyer, after the discovery of the defects which would have authorized a rescission of the sale, is generally sufficient to estop him from asserting the right of rescission, he certainly loses such right when, in addition to the retention and use of the article, he expressly elects to affirm the contract by notifying the seller that he will hold him for damages for breach of warranties in the contract of sale. In the case of Hallwood Cash Register Co. v. Berry, 35 Tex. Civ. App. 554, 80 S. W. 857, it was held that the use by appellee Berry of a machine, purchased by him from appellant, for 14 days after he had discovered its defects and had written appellant that he intended to sue for recovery of the money he had paid therefor, was a waiver of his right to rescind the contract of sale, and that the trial court should have so instructed the jury. In support of this holding the court cites the

cases of Foster v. Rowley, 110 Mich. 63, 67 N. W. 1077, Palmer v. Banfield, 86 Wis. 441, 56 N. W. 1090, and Bassett v. Brown, 105 Mass. 551, each of which sustains the holding. The holding also finds support in the following cases: Pullman Car Co. v. Street Car Co., 157 U. S. 94, 15 Sup. Ct. 503, 39 L. Ed. 632; Scalf v. Tompkins, 61 Tex. 476; Geiser Mfg. Co. v. Lunsford, 139 S. W. 68.

We think, upon the facts shown by the undisputed evidence, the trial court erred in submitting to the jury the question of whether plaintiff's offer to return the car was made in a reasonable time, and should have instructed the jury to find for defendant upon the issue of plaintiff's right to rescind the contract of sale. The evidence upon the question of the value of the car is indefinite and unsatisfactory, and there is no finding of the jury upon that question which would authorize this court to render a judgment for any amount. Such being the state of the record, the judgment of the court below should be reversed and the cause remanded, and it has been so ordered.

Reversed and remanded.