### SHADDOCK et al. v. GRAPETTE CO., Inc.
### No. 3090.

Court of Civil Appeals of Texas.
Waco.
May 28, 1953.

Rehearing Denied June 18, 1953.

232

Rutan & Phares, Port Arthur, for appellant.

Armstrong, Bedford & Lambdin, Galveston, L. W. Bower, Camden, Ark., for appellee.

McDONALD, Chief Justice.

This was a suit brought by The Grapette Company, Inc., appellee, against Henry D. Shaddock, et al., appellants, on a note executed by appellants covering the balance of the purchase price of bottling machinery and equipment in Galveston, together with 3 trucks, all sold by appellee to appellants, and for ·foreclosure of chattel mortgage on said equipment. Appellants defended on the ground that the sale of the equipment, machinery and trucks had been procured by various false and fraudulent representations made by the President of the appellee Company regarding their condition and efficiency, the number of customers which appellee Company had in the Galveston area, and the market potential for Grapette beverage in that area.

Trial was to a jury and upon its verdict judgment was rendered for appellee Grapette Company for the full amount of the note sued on and for foreclosure of the chattel mortgage.

Appellants appeal to this court upon 17 Points, but which present only 2 basic contentions: 1) That the Trial Court erred in that, by requiring the Jury to find if appellee Company's President "stated" instead of "represented" to appellants that the machinery was in first class condition; that it would perform the operations for which it was intended; that there were many satisfied customers in the Galveston area; and that there was a ready market for Grapette in the Galveston area; and, 2) That the Trial Court erred in overruling appellants' motion for judgment non obstante veredicto for the reason that the uncontradicted evidence disclosed that appellee restricted appellants to the sale of bottled Grapette to Galveston and Brazoria Counties in violation of the Anti-Trust Laws of Texas, Vernon's Ann.Civ.St. art. 7426 et seq.

Appellants aver in connection with their first basic contention that an ultimate issue of fact was not submitted to the jury; that the jury were led to believe that certain specific words necessarily had to be spoken, which is contrary to law; and that they were prejudiced by having a greater burden of proof placed on them than is required by law.

The question here presented is simply whether or not, under the particular facts in this case, it was reversible error for the Trial Court to use the word "stated" instead of the word "represented" when submitting to a jury special issues concerning alleged grounds for fraud in procuring a sale.

The court's issues were framed as to form as follows:

*Do you find from a preponderance of the evidence that B. T. Fooks Stated to the defendants * * * that the machinery and equipment * * * were in first class condition * * *?*

The appellants' requested issues were framed as to form as follows:

*Do you find from a preponderance of the evidence that B. T. Fooks * * * Represented to the defendants that the machinery and equipment * * * were in first class condition * * *?*

In the case at bar the appellants testified at length to the many things that appellee Company's President told them, and to representations that he made to them concerning the machinery and equipment at Galveston, and the Grapette business there located. They testified that he told them a great number of things in several different conversations. They testified in effect that he said that the machinery was in first class condition; that it would perform the operations for which it was intended; that there were many satisfied Grapette customers in the Galveston area; and that there was a ready market for Grapette in the Galveston area. They further testified that they relied on what he told them; and would not have bought the equipment and machinery except for their reliance upon his representations.

Since the word "stated" used in the special issues submitted, and the word "represented" used in the same issues requested by appellants were neither defined, the jury would have to accept either word in its normal popular acceptation. Represent is defined, among other definitions, to mean "to state" in both the New Century

and Webster New International Dictionaries. In common popular parlance, to say that a man *represented* or *stated* machinery to be in first class condition would be practically synonymous.

A case shall not be reversed because of failure to submit other and various phases or different shades of the same issue. See Rule 279 TRCP.

In determining whether the submission of a special issue constitutes prejudicial reversible error, the probable effect of the special issue on the minds of the jury in the light of the charge and the evidence as a whole must be considered. See Texas Employers Ins. Ass'n v. McKay, 146 Tex. 569, 210 S.W.2d 147; and, Herndon v. Halliburton Oil Well Cementing Co., Tex.Civ.App., 154 S.W.2d 163, Error Ref. W.O.M.

We have carefully reviewed the 597 pages constituting the Statement of Facts in this case and conclude that as applied to the facts in this case *"represented"* and *"stated"* are practically synonymous. Speaking generally we are inclined to the belief that use of the word *"represented"* rather than the word *"stated"* in submitting special issues in fraud cases is the preferable practice. However, before a case should be reversed on account of the deviation complained of, it should clearly and unmistakably appear that, viewed in the light of the court's charge as a whole, and viewed in the light of the particular facts in evidence in the case as a whole, that an improper judgment was rendered in the case.

We are satisfied from a review of this record that the action of the Trial Court, if error it was, was not one which " * * * was reasonably calculated to cause and probably did cause the rendition of an improper judgment in the case, * * *". Rule 434 TRCP. In fact, viewing the charge and record as a whole, we think it an unreasonable and quite unlikely conclusion that the jury was misled by the use of the. word *"stated"* rather than the word *"represented"* in the court's charge.

Since the past tense was used in the issues and since quotation marks were not used, it is clear that the court used the word *"stated"* synonymously with *"represented"*, and that inquiry was not being made about any special words that the appellee Company's President was supposed to have spoken.

In any event, the evidence in this case reflects that *if* the appellee Company's President did misrepresent the facts (which the jury found he did not), the appellants learned the true facts within from ten days to two weeks after signing the note, and wrote to the appellee Company's President of the conditions they found. Upon receipt of appellants' letter the appellee Company's President wrote appellants telling them that if they were dissatisfied he would return their down payment and cancel the entire deal. This offer to cancel, appellants refused to accept, and continued to operate the machinery and business for some 4½ months thereafter in reliance on what they contended to be the provisions of the contract which they now seek to rescind.

It is well settled that if a person who has been induced by fraud to enter a contract continues to receive benefits under the contract after he becomes aware of the fraud, he waives his right of rescission. It is the duty of the defrauded party, at the earliest practicable time after discovery of the fraud, to act to rescind the agreement. Any delay, or any conduct inconsistent with an intention of avoiding it, has the effect of waiving the right of rescission. Rosenbaum v. Texas Bldg. & Mortg. Co., 140 Tex. 325, 167 S.W.2d 506, 508; Houston Motor Car Co. v. Brashear, Tex.Civ.App., 158 S.W. 233, writ dis.

Applying the facts in this case to the principles of law recited, we hold that appellants waived their asserted misrepresentations, together with any right that they may have had to rescind their contract with appellee Company on the ground of fraud. Therefore, *any* possible error in the form of the fraud issues complained of becomes immaterial.

Appellants aver in connection with their 2nd basic contention that the note and chattel mortgage are null and void and unenforceable because the Franchise Agreement violated the Anti-Trust Laws of Texas.

It is true that our Anti-Trust Laws provide, among other things, that agreements are unlawful and void which create restrictions in trade; prevent or lessen competition in the sale of merchandise; or bind parties not to sell or dispose of any article of merchandise partially or entirely within the State of Texas.

 However, Congress has legislated under Art. 1, § 8 of the United States Constitution providing for patent rights, trademarks, and copyrights, and no state can nullify its acts. Therefore, Texas Anti-Trust Laws, if and where inconsistent with Congress Acts, are necessarily subject thereto.

In the case at bar "Grapette is a trademarked name. The name is of substantial value to the appellee. The Company's reputation has been built on the name "*Grapette*", and they have spent large sums of money advertising it. The Grapette Company sells to appellants Grapette syrup. Appellants in turn, with this syrup and other ingredients, manufacture the completed product. The complained of Franchise has not prohibited or restricted the *resale* of anything, but has simply placed a limitation on the use of appellee's trademarked name "Grapette", which use appellee has the right to grant, or to withhold, or to grant in a limited territory. Coca-Cola Co. v. State, Tex.Civ.App., 225 S.W. 791.

The Coca-Cola case, supra, which has been cited with approval by our courts many times, lays down the proposition that the owner of a patent right, copyright, or trademark, having the exclusive right to manufacture and sell the article protected thereby, and being under no legal obligation to grant such right to another, may impose upon his assignee such restrictions as he may see proper, and to which his assignee will agree, including the price at which the article may be sold, *the territory in which it may be manufactured and sold*, and the material that may be used in its manufacture.

Applying the legal principles announced to the particular facts in the case at bar, it is our view that the franchise or agreement between appellee Company and appellants is not violative of the Texas Anti-Trust Laws, or in restraint of trade.

All of appellants' points and all contentions made thereunder are overruled and the judgment of the trial court is affirmed.

TIREY, J., not participating on account of illness.