TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN







NO. 03-94-00185-CV







William G. Barber and Patricia W. Barber, Appellants



v.



The Travelers Insurance Company, Burger King Corporation, and 


Brown McCarroll & Oaks Hartline, Appellees







FROM THE DISTRICT COURT OF TRAVIS COUNTY, 201ST JUDICIAL DISTRICT


NO. 92-15763, HONORABLE JAMES R. MEYERS, JUDGE PRESIDING








 William and Patricia Barber (1) sued The Travelers Insurance Company ("Travelers")
and Burger King Corporation ("Burger King") on causes of action for negligence and tortious
interference with a contractual relationship. In the same cause, the Barbers sued the law firm of
Brown McCarroll & Oaks Hartline ("Brown McCarroll") on a cause of action for "negligent
misrepresentation" that allegedly caused Barber to withdraw from the firm. The trial court
sustained the defendants' motions for summary judgment that the Barbers take nothing by their
claims. The Barbers appeal. We will affirm the summary judgment as to the Barbers' claims
against Travelers and Burger King and will reverse the summary judgment as to the Barbers'
claim against Brown McCarroll.


THE CONTROVERSY


 Barber was a member of the Brown McCarroll law firm when his minor
granddaughter, Kathryn Kelley, was injured on playground equipment maintained at a Burger
King restaurant. Kathryn's parents contracted with Brown McCarroll to represent them and
Kathryn in litigation to recover compensatory damages for her injuries. In the contract, the
parties also agreed that Barber would be "primary counsel" and that he would pursue a "national
fix," that is to say, an additional remedy that would protect other children at other Burger King
restaurants across the nation from the risk of similar injuries.

 Before filing suit, Barber searched Brown McCarroll's records for any possible
conflict of interest that might exist by reason of his representation in the suit against Burger King. 
None appeared. He mailed "DTPA" notices (2) to Burger King and the manufacturer of the
playground equipment. Soon afterwards, Travelers' employee Karen Birch contacted Barber to
discuss the litigation against Burger King. (3) Birch advised Barber that each owner of a Burger
King franchise was contractually bound to defend and indemnify Burger King in cases like
Kathryn's and, as a result, she did not believe Burger King would play a major role in the
litigation. Barber told Birch he thought Burger King might have no liability and if discovery
revealed that to be so, he would non-suit Burger King without the necessity of its filing a motion
for summary judgment.

 Barber sued Burger King and the manufacturer of the playground equipment. In
the course of discovery, it appeared that Burger King might be subject to liability. Barber
amended his pleading to request punitive damages against Burger King.

 Birch contacted her supervisor, Cheryl Ackerman, and a Burger King official, Tom
Dunn, to discuss Burger King's possible liability and Barber's removal from the litigation because
the Brown McCarroll law firm had previously represented Travelers in cases like Kathryn's. 
Birch stated her belief that Barber had become emotionally involved in the lawsuit and had lost
objectivity. Birch suggested that the suit might be settled for a reasonable amount without the
element of a "national fix."

 While Barber was on vacation, Birch contacted another partner in the Brown
McCarroll firm, Robert Oliver, and requested a list of lawsuits in which Brown McCarroll had
represented Travelers. On the same day, Oliver and Kinnan Goleman, the firm's managing
partner, sent a "fax" message to Barber. The message stated as follows:



Karen Birch with The Travelers has now advised that our representation against
Burger King is no longer acceptable because of complaints by their self-insured,
Burger King.


She advises that we need to disengage from this case as soon as possible.


Suggested alternatives:


1. Settle the case for a reasonable monetary sum; or 


2. Refer to other counsel.



Six days later, Oliver telephoned Birch. He asked whether Burger King would agree to Barber's
continuing representation in the Kelley case if Barber took a leave of absence from Brown
McCarroll. Birch responded that a conflict of interest would remain even if Barber took such a
leave of absence. Seven days after this conversation, the Brown McCarroll management
committee decided that no member of the firm, including Barber, should continue as counsel in
the Kelley case.

 Desiring to continue his representation in the case, Barber decided to retire from
the Brown McCarroll firm. He and the firm entered into a contract under which Barber retired
from the firm effective September 1, 1991, in consideration of the payment of $20,000 per month
for five months and $5,000 per month for sixty months.

 Barber sued Travelers and Burger King, alleging causes of action for negligence
and tortious interference with his partnership contract with Brown McCarroll. That is the suit
now before us on appellate review. In the course of litigation, Goleman testified on deposition
that Travelers imposed no pressure on Brown McCarroll to withdraw from the Kelley litigation;
instead, the decision to withdraw was solely an internal business decision by Brown McCarroll. 
Thereupon, Barber joined Brown McCarroll as a party defendant alleging against the firm a cause
of action for misrepresentation: that Brown McCarroll had falsely represented to Barber that
Travelers pressured the firm to withdraw from the Kelley litigation on pain of losing Travelers's
business; that Barber was induced thereby to take early retirement from Brown McCarroll; and
that he sustained certain damages as a result.

 On summary judgment, the trial court ordered that the Barbers take nothing by their
claims against Travelers, Burger King, and Brown McCarroll. The Barbers appeal to this Court
on points of error discussed below.



THE SUMMARY JUDGMENT ORDER


 In its summary-judgment order, (4) the trial court stated as follows the grounds upon
which the court based its summary judgment: (1) Barber's early retirement contract with Brown
McCarroll "represents a contractual relationship . . . supported by consideration and mutuality"
from which Travelers and Burger King benefitted. "Mr. Barber cannot complain that his
employment contract was interfered with under these circumstances"; (5) and (2) "Travelers and
Burger King had no specific intent to interfere with the contractual relationship between Will
Barber and his firm [and] Travelers was exercising a right that any client has of complaining about
something his lawyer is doing that the client sees as affecting the client's interest."

 As discussed below, the court also sustained certain special exceptions urged by
Burger King and Travelers. When a trial court lists multiple reasons for granting summary
judgment, its decision will be upheld on appeal if any theory advanced is meritorious. Hayes v.
E.T.S. Enters., 809 S.W.2d 652, 654 (Tex. App.--Amarillo 1991, writ denied). (6)



NEGLIGENT MISREPRESENTATION


 In their first point of error, the Barbers contend the trial court erred in awarding
summary judgment on the ground that Barber's early retirement contract with Brown McCarroll
precluded recovery on their cause of action against the firm for negligent misrepresentation. (7) The
allegations, they say, set out a cause of action in tort, and one not barred by Barber's early
retirement contract. In support of the trial-court judgment, Brown McCarroll argues that Barber's
early retirement contract has not been set aside; the Barbers have ratified the contract by accepting
benefits payable under it; and they cannot now maintain any kind of action to recover lost earnings
or other benefits they have bargained away.

 We believe the trial court erred in awarding summary judgment against the Barbers'
claim. If a person who has been induced by fraud to enter a contract continues to accept the
benefits of the contract after he discovers the fraud, he thereby ratifies the contract and is bound
by its terms. Daniel v. Goesl, 341 S.W.2d 892, 895 (Tex. 1960); Rosenblaum v. Texas Bldg. &
Mortgage Co., 167 S.W.2d 506, 508 (Tex. 1943). It is uncontroverted that the Barbers continued
to accept the benefits of their bargain with Brown McCarroll after Goleman's deposition
testimony. By affirming the contract, however, the Barbers did not surrender their right to sue
for damages in tort.

 On Barber's withdrawal from Brown McCarroll, the Barbers fully performed their
bargain under the early retirement contract. When they learned of the alleged misrepresentation
that induced their execution of the contract, they were faced with a choice between two legally
available remedies. They were entitled to pursue the equitable remedy of rescission, provided
they were willing to return payments received under the contract. Alternatively, they were
entitled to affirm the contract, retain the payments made thereunder, and pursue the common law
remedy of an action in tort for "deceit," that is to say, an action for any damages occasioned by
the misrepresentation. This is not an action on or for breach of the contract. See Dallas Farm
Mach. Co. v. Reaves, 307 S.W.2d 233, 239 (Tex. 1957); George v. Hesse, 93 S.W. 107, 108
(Tex. 1906); Grabenheimer v. L. & H. Blum, 63 Tex. 369, 374-75 (1885); see also W. Page
Keeton et al., Prosser & Keeton on the Law of Torts § 110, at 770 5th ed. 1984) (when the
defrauded party executes fully his obligation under the contract, "it is generally recognized that
it is too late to require him to rescind, and that his continued performance is merely affirmance,
and not a waiver of his action for damages"). That the Barbers affirmed the contract simply
signifies that they chose their tort remedy for damages in lieu of the equitable remedy of
rescission. It does not, under the authorities cited, bar their tort action for any damages resulting
from the misrepresentation.

 Brown McCarroll cites Wise v. Pena, 552 S.W.2d 196, 200 (Tex. Civ.
App.--Corpus Christi 1977, writ dism'd w.o.j.), for the proposition that a defrauded party waives
his right to any remedy by ratifying a contract induced by fraud. The proposition is not in
accordance with Texas law and is not, we believe, supported by the cases cited in the Wise
opinion. See Shaddock v. Grapette, 259 S.W.2d 231, 234 (Tex. Civ. App.--Waco 1953, no writ)
("It is well settled that if a person induced by fraud to enter a contract continues to receive
benefits under the contact after he becomes aware of the fraud, he waives his right of rescission.")
(emphasis added); Fox v. Miller, 198 S.W.2d 776, 778 (Tex. Civ. App.--San Antonio 1946, writ
ref'd n.r.e.) (party waived right to damages by entering into new agreement after discovering
fraud); Risely v. McAdams, 108 S.W.2d 443, 444 (Tex. Civ. App.--Amarillo 1937, no writ) ("The
law is of long standing to the effect that the rights of rescission or to sue for damages for fraud
is [sic] waived when the defrauded party enters into a new contract or agreement by which the
rights of the parties are adjusted, after he had been apprised of the fraud . . . .") (emphasis
added). Barber has waived by election any right of rescission and no new contract is involved. (8)

 We hold the trial court erred in concluding the Barbers' contract precluded an 
action against Brown McCarroll for negligent misrepresentation. We sustain the Barbers' point
of error one as it pertains to Brown McCarroll.



TORTIOUS INTERFERENCE


 In their second point of error, the Barbers contend the trial court erred in granting
Travelers's and Burger King's motions for summary judgment on the ground that there was no
specific intent to interfere with Barber's partnership contract with Brown McCarroll. The
elements of tortious interference are: (1) the existence of a contract subject to interference; (2)
the act of interference was willful and intentional; (3) such intentional act was a proximate cause
of plaintiff's damage; and (4) actual damage or loss occurred. Victoria Bank & Trust Co. v.
Brady, 811 S.W.2d 931, 939 (Tex. 1991).

 The alleged acts of interference consist of the communications between Birch and
Oliver described above in our summary of the summary-judgment record. Intentional interference
requires that "the actor desires to cause the consequences of his act, or that he believes that the
consequences are substantially certain to result from it." Southwestern Bell Tel. Co. v. John Carlo
Tex., Inc., 843 S.W.2d 470, 472 (Tex. 1992).

 The Barbers contend in their live petition that Travelers and Burger King wished
Barber out of the Kelley case because he was demanding the "national fix" in addition to monetary
damages. They further contend that Travelers was ready to do whatever was necessary to remove
Barber, including withdrawing its business from Brown McCarroll. It cannot reasonably be
inferred, however, that an intention to force Barber from the case is equivalent to an intention to
interfere with Barber's contractual relationship with the firm.

 The present case is similar to John Carlo. Id. Carlo sued Southwestern Bell
("Bell") for tortious interference based upon Bell's failure to relocate its telephone poles in a
timely manner in accordance with a city ordinance. Bell's failure to act prohibited Carlo's
performance of his contract with the City of Houston to widen city roads. The jury found that
Bell intentionally failed timely to relocate its poles. The supreme court held this finding was not
tantamount to a finding that Bell intended to interfere with Carlo's contract with the city. Id. at
472.

 The Barbers obscure the issue by maintaining that Travelers's intentional
interference with the contract between Brown McCarroll and the Kelleys satisfies the willful and
intentional requirement of tortious interference with the partnership contract between Barber and
his firm. In support of this contention, the Barbers cite American Petroleum Co. v.
Transcontinental Gas Pipe Line Corp., 798 S.W.2d 274, 279 (Tex. 1990). The decision holds
that a pipeline company's interference with working-interest owners' agreements with oil-well
operators was not privileged for the purpose of tortious interference claims. In that case, the
pipeline company threatened not to take gas in accordance with its contracts with oil-well
operators until the working-interest owners agreed to settle claims against the pipeline company. 
The Barbers omit an important sentence in their lengthy quotation from the case. The omitted part
states: "[a] knowing and intentional breach of one's direct contract may also be an act tortiously
interfering with a third party's contract, if it is done with a purpose and effect of preventing the
third party from performing its contract with another." Id. at 279 (emphasis added).

 Travelers and Burger King have met their burden to disprove prima facie the
necessary element of intent. We therefore overrule the Barbers' second point of error. In light
of our holding, we need not address their third point of error relating to privilege.



SPECIAL EXCEPTIONS


 In the Barbers' fourth point of error, they complain the trial court erred in
sustaining Travelers and Burger King's special exceptions to their fifth-amended original petition. 
The petition alleged:



[U]nder these circumstances, a person of ordinary common sense could recognize
that if she did not exercise reasonable care in her discussions with other partners
concerning Mr. Barber's cases, her conduct could jeopardize his position with the
law firm. Accordingly, she had a duty to use ordinary care to avoid placing Mr.
Barber in jeopardy with the law firm in her discussion with other partners
concerning his representation of the Kelleys and Lees. During July, 1991, she
decided she wanted to get Will Barber "off of the case" he was pursuing for the
Kelleys and Lees. In a conference call to her Travelers supervisor and a Burger
King official, she specifically obtained their approval to get him off of the case. 
Thereafter she contacted Robert Oliver, one of William's law partners, concerning
Williams's continued representation of the Kelleys and Lees. After discussions
with some of the partners, Mr. Oliver called Ms. Birch and asked her for Burger
King's and Travelers' permission to allow Mr. Barber to take a leave of absence
from the firm to pursue the case. Ms. Birch denied this request without ever
explaining to Mr. Oliver (if it was a fact), that neither Travelers nor Burger King
had any objection to Mr. Barber's handling of the cases if there was no conflict of
interest. Throughout these conversations Karen Birch was negligent, as that term
is used in law, in that she:


1. failed to investigate and determine if in fact there had been prior representation
by the law firm of Burger King Corporation that would present a legal conflict
of interest; and


2. failed to inform Robert Oliver that neither she, Travelers Insurance Company
nor Burger King Corporation had any objection to Mr. Barber's continuing
representation of the Kelleys and Lees if there was no conflict of interest
between the law firm and Burger King.



 Travelers and Burger King filed special exceptions to the allegations on the ground
that the Barbers had failed to state a cause of action. See Texas Dep't of Corrections v. Herring,
513 S.W.2d 6, 9-10 (Tex. 1974).

 We must assume, in reviewing the trial court's decision sustaining the special
exceptions, that all material facts alleged by the Barbers are true. Aranda v. Insurance Co. of N.
Am., 748 S.W.2d 210, 213 (Tex. 1988). Absent an abuse of discretion, we may not disturb the
trial court's ruling. Hubler v. City of Corpus Christi, 564 S.W.2d 816, 820 (Tex. App.--Corpus
Christi 1978, writ ref'd n.r.e.).

 The Barbers argue that Birch should have known that the inquiry regarding the
Kelley litigation would "jeopardize Barber's position with the firm" and, therefore, she "had a
duty to use ordinary care to avoid harming Mr. Barber's relationship with his firm." In effect,
the Barbers have alleged a cause of action for negligent interference with a contractual
relationship. Texas courts do not recognize tortious interference of contract based on negligence. 
John Carlo, 843 S.W.2d at 472; see also Restatement (Second) of Torts §§ 766-766C (1965). 
Finding no abuse of discretion, we overrule the Barber's fourth point of error.



HEARSAY OBJECTION


 In point of error five, the Barbers contend the trial court erred in sustaining
Travelers and Burger King's hearsay objection to Barber's notes and deposition testimony
describing a telephone conversation with Keith Taunton, Burger King's attorney in the Kelley
litigation. The Barbers contend the conversation constituted an admission by a party-opponent
pursuant to the Texas Rules of Civil Evidence. See Tex. R. Civ. Evid. 801(e)(2). 

 The excluded testimony consisted of Taunton telling Barber of a previous
conversation that took place between Taunton and Birch. The gist of the conversation, as
reflected in Barber's notes, was as follows: Taunton had known about the circumstances
surrounding Barber's departure from the firm; Taunton had nothing to do with that event; Birch
told Taunton that she had a "good feeling" that Barber would "give up"; Birch asked Taunton if
she should start "pull[ing] files"; Taunton told her it was her "call"; Taunton believed that Barber
might not give up but if pushed to the wall he might leave Brown McCarroll.

 We believe the trial judge properly sustained appellees' hearsay objections to
Barber's notes of the conversation and his testimony. A statement by a party's agent concerning
a matter within the scope of the declarant's employment and made during the existence of the
employment relationship is not hearsay. Handel v. The Long Trusts, 757 S.W.2d 848, 851 (Tex.
App.--Texarkana 1988, no writ). The Barbers, as proponents of the deposition testimony and
notes, had the burden to show that the statements were made concerning a matter within the scope
of Taunton's employment. Norton v. Martin, 703 S.W.2d 267, 272 (Tex. App.--San Antonio
1985, writ ref'd n.r.e.). An attorney acts as a special agent authorized only to fulfill those duties
in furtherance of his employment. Duval County Ranch Co. v. Alamo Lumber Co., 663 S.W.2d
627, 633 (Tex. App.--Amarillo 1983, writ ref'd n.r.e.). When a party seeks to use, as a vicarious
admission, an attorney's hearsay statements against that attorney's client, the trial judge must first
find as a preliminary fact that the statements were authorized. Id. at 633. The summary judgment
record fails to show that the statements made during the course of the conversation concerned a
matter within the scope of Taunton's employment as attorney for Burger King in the Kelley
litigation. See Handel, 757 S.W.2d at 851. Finding no abuse of discretion, we overrule the
Barbers' firth point of error. See Reichhold Chems. v. Puremco Mfg., 854 S.W.2d 240 (Tex.
App.--Waco 1993, writ denied).



CONCLUSION


 For the reasons stated, we reverse the trial-court order granting summary judgment
in favor of Brown McCarroll and remand that portion of the cause of action to the trial court. The
remainder of the judgment is affirmed.



 

 John Powers, Justice

Before Justices Powers, Aboussie and Jones

Reversed and Remanded in Part; Affirmed in Part

Filed: May 3, 1995

Do Not Publish 

1.   The Barbers are husband and wife. It appears that Patricia Barber's interest is a
community property interest in William Barber's partnership interest in the firm of Brown
McCarroll & Oaks Hartline. We will refer to William hereafter as "Barber."
2.   The Deceptive Trade Practices--Consumer Protection Act, Tex. Bus. & Com. Code Ann.
§ 17.505 (West Supp. 1995) ("DTPA"), provides that any consumer seeking damages under
the DTPA must give sixty days' notice before filing suit.
3.   Travelers represented Burger King, a self-insurer, on a contract basis.
4.   The standards for reviewing a motion for summary judgment are well established: (1)
the movant for summary judgment has the burden of showing that no genuine issue of
material fact exists and that he is entitled to judgment as a matter of law; (2) in deciding
whether there is a disputed material fact issue precluding summary judgment, evidence
favorable to the nonmovant will be taken as true; and (3) every reasonable inference must
be indulged in favor of the nonmovant and any doubts resolved in its favor. Nixon v. Mr.
Property Management Co., 690 S.W.2d 546, 548-49 (Tex. 1985).
5.   Travelers and Burger King contend that this language evidences the intention of the
trial court to base its summary judgment order on a want of proximate cause in addition to
its stated bases of estoppel by contract, want of intent, and privilege. Our disposition of the
case does not require that we address this issue.
6.   The Barbers complain on appeal that the trial court "failed to consider a lawyer's duty
not to violate the Disciplinary Rules of Professional Conduct." Because the Barbers did not
raise this issue in the trial court, any error concerning the disciplinary rules has been waived. 
City of Houston v. Clear Creek Basin Auth., 589 S.W.2d 671, 678 (Tex. 1979); Klafehn v. Fain,
643 S.W.2d 227, 228 (Tex. App.--Fort Worth 1982, writ ref'd n.r.e.); Castleberry v. Goolsby
Bldg. Corp., 608 S.W.2d 763, 765 (Tex. Civ. App.--Corpus Christi 1980), aff'd, 617 S.W.2d 665
(Tex. 1981).
7.   Brown McCarroll's contended as follows its motion for summary judgment:


1. Barber cannot sue to recover what he willingly gave up by contract.


2. By receiving and accepting benefits under the early retirement contract after
Barber became aware of the alleged misrepresentation, Barber has affirmed
the contract, as a matter of law, and must abide by its terms.


3. Barber, in a deposition, testified that he still believed that pressure from
Travelers caused the firm's withdrawal from the Kelley litigation and that
Brown McCarroll's later statement disclaiming any pressure from Travelers
was a misrepresentation. Barber may not sue on a negligent
"misrepresentation" that he claims is not false.


4. Barber was not forced out of the firm; he could have remained a partner by
simply abiding by the decision of the management committee to withdraw
from the Kelley litigation, as the firm had the right to do.
8.   A defrauded party may sue in tort for "fraud" regardless of whether the fraud was
intentional, negligent, or innocent. However, the degree of culpability determines the
amount of damages. Federal Land Bank Ass'n v. Sloane, 825 S.W.2d 439, 442 (Tex. 1991)
(damages limited to pecuniary losses in negligent misrepresentation action because fraud
perpetrated was unintentional); see also Prosser & Keeton, supra, at 768-69; Restatement
(Second) of Torts §§ 552B, 552C cmt. f (1977).