HALLWOOD CASH REGISTER COMPANY v. J. M. BERRY ET AL.

Decided April 20, 1904.

**1.—Foreign Corporation—Permit—Pleading.**

A foreign corporation manufacturing articles sold in this State through. its agents was not required to obtain a permit to do business in Texas, and. consequently suit could be brought for purchase price of its goods without. pleading and proving such permit.

**2.—Contract—Rescission—Waiver—Fraud.**

The continued use of an article after discovery of its worthlessness, while a waiver of the right to rescind the contract of purchase, does not preclude a recovery of damages for fraudulent misrepresentations in obtaining the contract.

**3.—Parol Evidence—Fraud.**

Parol evidence may be introduced to show fraud through which a contract has been obtained.

**4.—Contract—Notes—Cancellation—Fraud.**

Judgment canceling notes for the purchase price of a cash register machine and refunding the amount paid on it was supported by the evidence whether the jury found on the ground that the machine was worthless, in which case there would be an entire want of consideration, or that there was fraud in procuring the contract.

Appeal from the County Court of Dallas.  Tried below before Hon.. Ed. S. Lauderdale.

*Bell & Seay,* for appellant.

*Burgess & Burgess,* for appellees.

FLY, ASSOCIATE JUSTICE.—Appellant sued J. M. Berry and Mary D. Berry, a partnership doing business under the firm name of J. M. Berry & Sister, for $240, less a credit of $25, alleged to be due for a cash register.  The Texas & Pacific Railway Company was joined as a party under an allegation that it had possession of the cash register upon which appellant sought to have a lien held by it foreclosed.  A trial by jury resulted in a verdict and judgment in favor of J. M. Berry & Sister for $25 and cancellation of a contract and notes evidencing the debt. Judgment was rendered in favor of the railway company.

Appellant is a foreign corporation that manufactures cash registers in. Columbus, O., which are sold through an agency in Texas.  Under the authority of Miller v. Goodman, 91 Texas, 41, appellant was not re-- quired to obtain a permit to do business in Texas, and consequently has full authority to prosecute this suit without pleading and proving such permit.

J. M. Berry testified that after he had gone to Dallas and ascer-- tained that the defect in his cash register was one common to all cash registers manufactured by appellant, he went home and continued to use the register, and even after he had written that he intended to sue for the money he had paid on the machine and to cancel the notes he- continued to use it for twelve or fourteen days.  He knew the defects in the register, indeed he swore that he knew of them "from the

start," and yet he testified, "till I sent it back I kept it on my counter and used it in my business, I and my clerks registering our transactions on it, but it was no protection whatever. I did not send the machine back until I got a chance to come to Dallas and then I brought it with me."

In connection with the foregoing testimony the appellant requested the following charge: "If the defendants, after they or either of them discovered that the cash register was not as represented by plaintiff (if such was true), did not return same promptly to plaintiff, but continued after such discovery to retain and use said register after the plaintiff declined to take same back, then you will find against the plea of defendants asking a rescission of the contract sued on."

The rule is that a defrauded party must disaffirm the contract at the earliest practicable time after the fraud is discovered, and that he must return or offer to return whatever he has received from the other party, and if he retains the article purchased and continues to use it after discovery of the fraud that induced the purchase, he will be held to have waived the right to rescind the contract and to have acquiesced in it. In a Michigan case, cited by appellant, the above stated principle was discussed and applied as follows: "The testimony shows that just prior to the commencement of this suit the defendant notified the plaintiff that he would not keep the property, and plaintiff must take it away. This was not done, and defendant, by his own testimony, continued to use it. It was the duty of defendant as soon as he learned of the misstatements to have rescinded the contract; and notice of such rescission must have been promptly given, and adhered to, in order to bind the parties thereto. The continued use of the property for some thirty days after he had learned the facts would be a waiver of the right of rescission, even though notice of such rescission had been given." A number of Michigan decisions were cited in support of the rule announced, and the court proceeded: "While the court left the question of rescission to the jury, we think, under defendant's own testimony, the court should have instructed a verdict for plaintiff. We think defendant's continued use of the property for thirty days after he learned of the alleged fraud amounted to a waiver of any intent to rescind the contract." Foster v. Rowley, 67 N. W. Rep., 1077.

In the case of Palmer v. Banfield, 56 N. W. Rep., 1090, it appeared from the testimony that a reaper and harvester was delivered to the defendant on Thursday, and on Friday he discovered the defects in the machine and he decided to return it. However, he used the machine nearly all of Saturday and until he had finished cutting his grain, when he returned it, but the plaintiff refused to accept it. The Supreme Court of Wisconsin held that such use was an acceptance of the machine as a compliance with the contract, and was fatal to the rights to rescind.

In the case of Bassett v. Brown, 105 Mass., 551, it was held that a party led into a contract by fraud, "was entitled, upon discovering the

facts, to elect whether to affirm the conveyance and retain the consideration, or to avoid it. * * * If, after such knowledge, he continues to deal with the property received as his own, he thereby affirms the contract by which he received it."

The testimony of J. M. Berry, one of the appellees, brings this case clearly within the scope and application of the rule laid down in the decisions cited. He knew that the machine was worthless and yet he used it after gaining such knowledge. He did not retain the machine after he went to Dallas for the purpose of further testing its usefulness and availability. He knew as much the first day he used it as afterwards, according to his own statements. He used it for the purpose for which he had bought it and thereby waived all right to rescind his contract of purchase.

While the evidence of retention and use of the register after knowledge of the fraud, precluded a rescission of the contract, it did not prevent a recovery of the damages resulting therefrom. There are allegations of a breach of the warranty of the machine, the misrepresentations by which the contract was obtained, and the total worthlessness of the machine. "If the fraud result in a contract, performance of the same, after discovering that it was fraudulently obtained by the opposite party, does not preclude a person suing for damages on account of the fraud. The injured party may retain the benefits of the contract, confirm its validity and still recover damages for the fraud by which he was induced to make it; or he may recoup any damages which he has sustained, if the opposite party sue him for money due on the contract or for failure to perform." The language is quoted from Bigelow on Fraud, and is approved in Grabenheimer v. Blum, 63 Texas, 369.

To hold, as contended by appellant, that parol proof can not be introduced to show the misrepresentation and fraud through which a contract has been obtained, would be to hold that fraud generally could not be proved in avoidance of a contract. "It is an elementary doctrine that parol evidence is not, in general, admissible between the parties to vary a written instrument, whether the same has been voluntarily adopted or made in pursuance of a legal necessity. It is equally well settled that mistake, fraud, surprise and accident furnish exceptions to this otherwise universal doctrine. Parol evidence may, in proper modes and within proper limits, be admitted to vary written instruments, upon the ground of mistake, fraud, surprise and accident. This exception rests upon the highest motives of policy and expediency; for otherwise an injured party would generally be without remedy." Pom. Eq. Jur., sec. 858.

We think the evidence of fraud sufficient to justify a submission of the issue to the jury, and the same may be said as to the utter worthlessness of the register. The submission of that question to the jury imposed a burden upon appellees that they should not have borne in connection with the return of the machine, because if it was utterly worthless there was no necessity for a return of it.

If the jury found that the machine was utterly worthless, as they must have done under the instructions in order to have found that the machine was returned in a reasonable time, then there was a total failure of consideration, and the verdict was right, although the machine was not, as a matter of law, returned in a reasonable time. And if the verdict was not returned under the clause submitting the utter worthlessness of the machine and its return in a reasonable time, it can be justified under the clause presenting the issue of fraud and misrepresentation. In other words if the machine was worthless the notes should have been canceled and the money paid on the machine recovered, and if the contract was induced by fraud then the cancellation of the notes and recovery of the money was right. In either event the jury responded to the correct measure of damages.

There is no error requiring a reversal and the judgment is affirmed.

*Affirmed.*