SOUTHERN ENGINE & PUMP CO. v. TEN-
EHA LIGHT & POWER CO. (No. 7408.)

(Court of Civil Appeals of Texas. Galveston.
June 15, 1917.)

1. SALES ☞359(2)—REMEDIES OF BUYER—
SUFFICIENCY.

In an action on notes given for the purchase
price of an engine, and to foreclose a chattel
mortgage lien on such property, evidence *held*
to justify the conclusion that the engine, as such,
had no value.

[Ed. Note.—For other cases, see Sales, Cent.
Dig. § 1058.]

2. SALES ☞354(5)—REMEDIES OF BUYER—
RESCISSION—MARKET VALUE.

As the answer alleges that the engine was
worthless, and the evidence amply sustains the
allegations that the engine was worthless as
such, although some parts of the engine may
have had some value as manufactured machinery
or as junk, failure of consideration was suffi-
ciently pleaded and·shown to defeat the right
of plaintiff to recover on the notes, although the
market value of the engine contracted to be de-
livered and the market value of the engine ac-
tually delivered were not pleaded.

[Ed. Note.—For other cases, see Sales, Cent.
Dig. § 1014.]

3. SALES ☞178(3)—ACCEPTANCE.

Where the contract for the sale of an engine
provided that use of the engine for 10 days con-
stituted an acceptance thereof, and that any
complaint as to defects must be made in writing
within 10 days from the date of its first use,
stating specifically and fully wherein the engine
failed to fulfill specifications, although such no-
tice in writing was not given the seller within
10 days after the engine was installed and put
into operation, where it appeared that for the
first 4 or 5 days the seller's agent was present,
for the purpose of seeing that the engine was
properly installed, and during that time there
was no doubt in the mind of the buyer or such
agent that the engine would not operate success-
fully, and the buyer was notified in writing on
the fourteenth day, after the engine was started,
that it was not operating properly, and pointed
out the defects in its operation specifically, and
upon receiving such notice the seller made no
claim that the buyer had accepted the engine,
*held* that plaintiff's failure to make a complaint
in writing within 10 days did not constitute an
acceptance, or defeat his right to show that the
consideration ·of the contract had failed, and
upon this ground, have a cancellation of the
purchase-money notes and recover amount paid
by. him to the seller.

[Ed. Note.—For other cases, see Sales, Cent.
Dig. § 453.]

4. APPEAL AND ERROR ☞909(1)—REVIEW—
PRESUMPTIONS.

In an action on notes given for the purchase
price of an engine, where there was nothing in
the statement, under an assignment of error,
to show that express charges were incurred un-
der the warranty in the contract, which provided
that express charges on replaced parts were to
be paid by the buyer, the appellate court cannot
presume that the charges were incurred under
the conditions in the warranty, and an assign-
ment of error to the judgment, warranting such
express charges to the buyer, cannot be sus-
tained.

[Ed. Note.—For other cases, see Appeal and
Error, Cent. Dig. § 3675.]

Appeal from District Court, Harris Coun-
ty; J. D. Harvey, Judge.

Suit by the Southern Engine & Pump Com-
pany against the Teneha Light & Power Com-
pany, in which the defendant pleaded dam-
ages in reconvention in the answer. Judg-
ment for defendant, and plaintiff appeals.
Affirmed.

Bryan & Bryan, of Houston, for appellant.
Dallas Ivey, of Tenaha, and Carter & Walk-
er, of Center, for appellee.

PLEASANTS, C. J. This suit was brought
by appellant to recover of M. M. Eichelberger,
who was doing business under the firm name
of Teneha Light & Power Company, on 10
promissory notes, dated April 16, 1914, for
$50 each, with interest, and 10 per cent. at-
torney's fees, which notes were given as part
of the purchase money of certain machinery
and material sold by appellant to appellee,
and to foreclose a chattel mortgage lien on
said property and also to recover $43.39 on
open account for merchandise sold by appel-
lant to appellee.

Defendant in his answer after admitting
the purchase of the engine under the con-
tract declared on by plaintiff and the execu-
tion of the notes pleaded in substance that
he was induced to enter into the contract
for the purchase of the engine by fraudulent
misrepresentations· of plaintiff's agent who
sold him the engine; that the engine was
purchased under an express warranty. by
plaintiff that it would successfully operate,
and that if it did not plaintiff would furnish
an engine that would; that because of some
latent defect in its construction it could not
be successfully operated; that shortly after
it was installed its defective condition de-
veloped, and defendant notified plaintiff, who
endeavored to remedy the defects and make
the engine operate properly; that plaintiff's
repeated ·efforts to discover and remedy the
defects were unavailing, and defendant was
not able to successfully operate his plant
with the engine, and plaintiff failed, when
so requested by defendant, to comply with its
contract of warranty and furnish defendant
an engine that would successfully operate;
that defendant's continued efforts to run his
plant with said engine, which he was in-
duced to make by the repeated promises of
plaintiff to remedy the defects in the engine,
and assurance that it would make the en-
gine work properly, caused defendant much
loss and damage. The amount of the dam-
age claimed is itemized and each item is
specifically pleaded in the answer in re-
convention against plaintiff. The answer
further avers that defendant, being unable to
successfully operate his plant with said en-
gine, after several months' earnest endeavor
so to do, sold the plant, reserving the engine;
that the engine is worthless, and the con-
sideration for said contract and notes has
wholly failed.

"Further answering herein, he says that he
now tenders the engine to plaintiff, and asks

that plaintiff be required to receive the same, and that the contract between plaintiff and defendant be canceled, and that he recover the purchase price paid by him on said engine, and that the notes sued on herein by plaintiff be canceled and held for naught, and that he recover his damages, actual and exemplary, and for all costs of suit, and all matters between plaintiff and defendant touching the matters involved in this suit he fully inquired into, and for special and general relief, both in law and equity, he will ever pray."

Plaintiff filed a supplemental petition, in which it specially excepted to the several items of damage claimed by defendant, and specially pleaded that under the contract defendant had 10 days in which to test the engine, and that if he failed to complain to plaintiff of any defects, or continued to run the engine after the 10 days, it would constitute an acceptance of the engine, and that the engine commenced operating on May 12th, and on May 13th appellee accepted same in writing (which writing was set out in full), and continued to operate the engine the entire month of May and for more than 10 days.

Defendant filed his first amended first supplemental answer December 2, 1915, pleading that the defects in the engine were latent, and could not be discovered sooner than they were, and denying a waiver of any right he might have.

The trial in the court below without a jury resulted in a judgment that plaintiff take nothing by its suit; that the consideration for the notes had failed; that the engine was the property of plaintiff, and the title thereto vested in plaintiff. It was further adjudged that defendant recover of plaintiff the sum of $500, which he had paid plaintiff as part of the purchase price of the engine, and the further sums of $55 excess freight paid by the defendant on said engine, $52 express paid by defendant on cylinders for said engine, sent him by plaintiff in its efforts to remedy the defects in the engine, and $72 for repairs of said cylinders.

The evidence shows that the engine was installed on May 12, 1914, and put in operation by Mr. Cook, the agent of plaintiff, sent to Teneha for the purpose of starting its operation. He remained there 4 or 5 days. It operated satisfactorily for about 24 hours, and began to show that there was some material defect in its construction. The manner in which the engine performed is thus stated by defendant:

"Now, from the 12th of May, when this engine was installed, to the 28th of May, the condition of the engine, in its operation, was that it seemed to heat excessively in the crank shaft. Mr. Cook, the plaintiff's representative, was there and knew it. That was after the 12th. Mr. Cook was there 4 or 5 days, I don't remember just which, at that time. From the 12th of May to the date of the letter I have in my hand, that engine kept heating in the crank shaft all the time. It continued running hot in the crank shaft, and Mr. Cook gave us to understand when he was there that that was due to the internal combustion in the engine, and it would always be hot. I made a further report of that to them, about the 26th. The letter handed me is dated at Teneha, Tex., May 26, 1914, and is as follows: 'We are up against a new trouble, and have been fighting it since the 22d, with hopes of finding the trouble. The engine gets hot. Friday night it stopped on us from heat. Saturday night we had to shut down at 10:30, and worked all day Sunday, and since each morning from 3 to 5 it gets so hot it has to be shut down. We have taken the engine apart and cleaned the rings and everything about it, and now are up against a new proposition that we are not able to solve. It seems as though the oil burns on the cylinder and makes it work hard, and that heats the piston and crank shaft.' The condition that I described in that letter existed at that time; that letter is a correct statement of the trouble I had with the engine. The letter was written on the 26th. I had that engine installed on the 12th; it had been running 14 days up to that time."

[1] The engine could not be made to operate successfully for any length of time, and defendant was continually calling upon plaintiff to remedy its defects. In response to these calls plaintiff repeatedly sent men to Teneha to try and make the engine operate properly, and sent a new cylinder every few weeks to replace cylinders which wore out or were cut out for some unexplainable reason; but notwithstanding these efforts of plaintiff the defects were not remedied, and the engine would not operate successfully. The engine developed its guaranteed horse power, which was sufficient to properly operate defendant's plant; but, as before stated, because of some unexplained defect in its construction it could not be made to operate successfully, except for intervals. Sometimes it would not operate at all, and at other times its operation was wholly unsatisfactory.

Defendant finally became satisfied that it could not be made to operate successfully, and demanded of plaintiff that it comply with its contract, and furnish him an engine that would so operate. After evading for some time a positive answer to this demand, and making further representations to defendant that the engine would eventually operate properly, plaintiff finally refused to furnish another engine. The evidence justifies the conclusion that the engine as such had no value.

[2] Appellant's first assignment of error is as follows:

"The court erred in entering judgment against the plaintiff and for the defendant on his plea of failure of consideration, and in canceling the notes sued on by plaintiff, for the reason that said issue was not before the court, there being neither pleading nor evidence to support the same, in this: That it was not alleged and not proven what was the market value of the engine contracted to be delivered, and what was the market value of the engine actually delivered."

We do not think there is any merit in this assignment. The answer alleges that the engine was worthless, and the evidence amply sustains the allegation that it was worthless as an engine. Of course, some parts of it may have had some value as manufactured machinery, and the material out of which it

was made doubtless had some value as junk; but when it is shown that the engine as such was worthless to appellee, and that appellant failed to comply with its contract to furnish appellee an engine that would operate successfully, we think a failure of consideration is shown, which defeats the right of appellant to recover upon the notes, and entitled appellee to recover the amount paid by him on the contract. Hallwood Cash Register Co. v. Berry, 35 Tex. Civ. App. 554, 80 S. W. 857.

[3] The second and third assignments complain of the judgment on the ground that the defendant retained possession of the engine after he discovered that plaintiff had breached its contract, and under the terms of the contract use of the engine for ten days constituted an acceptance thereof, and defeats defendant's right to a cancellation of the notes and recovery of the amount paid by him. The provision of the contract upon which these assignments are predicated reads as follows:

"Should there be any doubt in the mind of the purchaser that the material furnished is as represented herein, he must advise Southern Engine & Pump Company, at Houston, Tex., in writing (by registered mail) within 10 days from date of its first use, stating specifically and fully wherein it fails to fulfill the specifications, whereupon we shall have 60 days within which to fulfill same. No such complaint being received hereunder, or the continued use of such machinery after expiration of time mentioned, shall constitute acceptance thereof as being in full compliance with contract."

The evidence shows that no notice in writing was given appellant within 10 days after the engine was installed and put in operation, specifying in what respect it failed to fulfill the specifications of the contract. But the evidence further shows that for the first 4 or 5 days in which the engine was operated appellant's agent was present for the purpose of seeing that it was properly installed and assisting in remedying any defects in its operation, and there was then no doubt in the mind of appellee "that the material furnished was not as represented," and both he and appellant's agent thought the engine would operate successfully. Appellant was notified in writing on the fourteenth day, after the engine was started, that it was not operating properly, and the defects in its operation specifically pointed out. Upon receiving this notice, appellant made no claim that appellee had accepted the engine and waived his right to require a performance of its contract; but, on the contrary, appellant recognized its duty to carry out its contract and provide an engine that would operate successfully, and for this purpose again sent its agent to examine the engine and remedy the defects in its operation.

We do not think, upon these facts, it should be held that defendant's failure to make complaint in writing within 10 days after he began operating the engine defeats his right

to show that the consideration of the contract had failed, and upon this ground have a cancellation of the notes and recover the amount paid by him for the engine. 35 Cyc. p. 424.

[4] The fourth assignment complains of the judgment for $52 express charges on cylinders, on the ground that under the terms of the contract these charges were to be paid by defendant. The statement under this assignment is as follows:

"The written contract between the parties contained this express warranty, namely: 'Guarantee. Any part of the engine returned f. o. b. factory within one year from date of engine invoice, broken on account of defect in material employed in said part, will be replaced or delivered f. o. b. factory free of charge.' The judgment included $52 express paid by appellee on the cylinders."

There is nothing in this statement to show that the express charges on the cylinders were incurred under the conditions in the guaranty quoted, and we cannot so presume. In the absence of such showing in the statement, the assignment cannot be sustained.

We think the judgment should be affirmed; and it has been so ordered.

Affirmed.