**J. B. COLT CO. v. HEAD et al.**
(No. 769–4740.)

(Commission of Appeals of Texas, Section B.
March 23, 1927.)

**1. Sales ⊕=38(1)—Fraud inducing buyers to sign contract held to entitle them to rescind, unless they subsequently waived fraud.**

Fraud of seller's agent, which induced buyers to sign contract by reading into contract stipulations not contained therein, and omitting to read other stipulations that were contained therein, and which were material on buyers' obligations, entitled buyers to cancel contract and note given for price, unless the fraud was thereafter waived by buyers in such a manner as to make contract binding on them, notwithstanding the fraud.

**2. Sales ⊕=121—Buyers' continued use of carbide generator after discovering fraud and giving notice of repudiation waived right to rescind.**

Buyers' continued use of carbide generator in their home for some time after discovering fraud by seller's agent which induced purchase, and after they repudiated contract and tendered generator back to seller, waived their right to rescind contract as matter of law.

**3. Appeal and error ⊕=1172(1)—Portion of judgment against which appellant made no complaint will be permitted to stand on appeal.**

Portion of adverse judgment against which appellant made no complaint will be permitted to stand on appeal.

Error to Court of Civil Appeals of Second Supreme Judicial District.

Action by J. B. Colt Company against T. M. Head and others. Judgment for defendants was affirmed by Court of Civil Appeals, and plaintiff brings error. Reversed, and judgment rendered for plaintiff.

M. N. Bauldwin, J. N. Bauldwin, and J. O. Lockett, all of Cleburne, for plaintiff in error.

F. E. Johnson and J. B. Haynes, both of Cleburne, for defendants in error.

POWELL, P. J. The general nature and result of this case in the trial court are made manifest by the following portion of the opinion of the Court of Civil Appeals:

"In the order given by the defendants, T. M. Head and wife, for the carbide generator in controversy, it was expressly stipulated that, when the same was accepted by the J. B. Colt Company, it would become a binding contract between the parties, and that thereby the defendants would become obligated to pay plaintiff the sum of $344.55 for the generator. While it was further stipulated that the defendants would later execute their promissory note in said sum, it was also provided that, in the event of a failure to execute such note, they would nevertheless be bound for the payment of the purchase price of $344.55. It thus appears that, not only were the two instruments parts and parcels of the same transaction, but that the accepted order, in itself, was, in fact, the foundation of plaintiff's cause of action, and that plaintiff recognized such to be true is conclusively shown by its pleadings, in which the terms of that contract were relied on to overcome the defenses to the suit.

"The findings of the jury to the effect that E. A. Cantrell, agent of the plaintiff, in negotiations between the parties, undertook to read the contract to the defendants before they signed it, and induced them to sign it by reading into it stipulations which did not appear in the instrument, and omitting to read other stipulations that were contained therein, all of which stipulations had a material bearing upon the obligations of the defendants in the purchase of the generator, and that defendants would not have signed the same but for such misrepresentations, were all supported by testimony offered by the defendants on the trial; and those findings cannot be disturbed for lack of sufficient proof. Those facts were alleged by the defendants as a ground for a rescission and cancellation of the contract, and the findings of the jury thereon constituted a sufficient basis for the granting of that relief by the trial court.

"In view of the fraud so alleged and proved, the contract and note given in pursuance thereof never created any legal obligations upon the part of the defendants, and were therefore nudum pactum, *unless the fraud was thereafter waived by the defendants in such a manner as to make the contracts binding upon them, notwithstanding the fraud*." (Italics ours.)

The trial court permitted the makers of this note to rescind it, and that action was affirmed by the Court of Civil Appeals. The latter court stated that its opinion was "not for publication." Therefore it is not reported.

The writ of error was granted by the Supreme Court on the allegation that the decision in the instant case was in conflict with the opinion of the Court of Civil Appeals at Texarkana in the case of Dalton Adding Machine Sales Co. v. Wicks & Co., 283 S. W. 642.

[1, 2] We quite agree with the views of the Court of Civil Appeals in the case at bar that the fraud found by the jury cancels the note and contract in suit, "unless the fraud was thereafter waived by the defendants in such a manner as to make the contracts binding upon them, notwithstanding the fraud." It is upon this very point that we think the decision in the instant case is in conflict with the Wicks Case, supra. We are of the view that the undisputed facts in this case were such as to have required the trial court to peremptorily instruct the jury in favor of plaintiff there. As Head understood the contract, he was to have ten months to test the generator. But he admits himself that it was not necessary to use that much time for this purpose. The generator proved unsatisfactory from the very

first. After some negotiations, he definitely and finally repudiated the contract in June, 1923. The company, in answering that letter from him, denied that the written contract was as he (Head) had understood it. He discovered the fraud at that time. And still, after acquiring all of that information, and after he had told the company that he would not accept the machine and had tendered it back, he continued to use it for quite a while. In this connection, we quote from his own testimony as follows:

"I notified this company in June to take this plant out. That was about the last of June, 1923. That was the year it was being demonstrated, and I found out it was a fraud. I received the generator about the 8th of December, 1922. I kept the generator installed and used it for about five months for myself and family, for lights most of the time, and for cooking a little while. This generator weighed 23 or 24 pounds. As to the metal in it, it is a sort of iron. As to the pipes, they are of the cheapest grade. They are black pipes. As to whether there is a difference in the grade of carbide, I don't know. I bought the carbide that they recommended. I used the plant the biggest portion of 1923 for lights. The time I took the plant out of my house and disconnected the lights was some time last year, 1924, in the middle of the year. It was connected up all the time, and I could have burned it if I had wanted to. That was up to the middle part of 1924."

It is clear to us that Head, after June, 1923, should not have used this property any further. He had repudiated the contract, and tendered the generator back. It was no longer his for any purpose, unless he expected to pay for it as per the contract made. He had no right to wear it out, as its continued use was reasonably calculated to do. When he did continue to use it, as he did, after that time, he waived his right, as a matter of law, to rescind the contract. It seems to us that any other rule would lead to the gravest of abuses. In deciding that this note was not enforceable, the Court of Civil Appeals clearly overruled the decision in the Wicks Case, supra. For instance, we quote from that opinion as follows:

"But the further facts cannot be put aside that, although the appellee notified the appellant that the machine was not the machine agreed to be sold, and offered to send it back, nevertheless the appellee thereafter used the machine as their own in their business 'up until about July 1, 1922, when the defendant purchased another make of bookkeeping machine.' The 'appellant paid no attention to their repeated complaints and the tender,' and therefore it did not take the machine away, and the appellee did not ship or return it to appellant, but used it as their own. Hence, although the appellee may have in the first instance given prompt notice of rescission, it did not adhere thereto. Appellee's continued use of the machine as its own in its business for some four months after appellee had learned the true facts would operate as an acceptance of the machine as a compliance with the contract, and fatal to the right to rescind, even though notice of rescission had been given previously. Car Co. v. Brashear (Tex. Civ. App.) 158 S. W. 233; Motor Co. v. White (Tex. Civ. App.) 239 S. W. 329; Cash Register Co. v. Berry, 35 Tex. Civ. App. 554, 80 S. W. 857; Edwards v. Wooldridge, 52 Tex. Civ. App. 512, 115 S. W. 920; Engine Co. v. Adams & Peters (Tex. Civ. App.) 169 S. W. 1143."

We think the decision in the Wicks Case sound. Under it the note in the instant suit was binding.

In the trial court, a part of the judgment entry reads as follows:

"The court finds from the uncontradicted evidence in this case that, at the time of the execution of the contract and note herein sued on, and at the time of the trial of this case, Mrs. T. M. Head was the wife of the said T. M. Head, and that said contract and note was not given for necessaries for herself or her children or for the benefit of her separate property, and under her plea of coverture as a matter of law the court finds that plaintiffs have no cause of action against the said Mrs. T. M. Head."

[3] There was no complaint by the company against that portion of the trial court's judgment. Therefore it stands. And we may say that it seems to be correct anyway.

We do think, however, that the peremptory instruction should have been given in favor of plaintiff in the trial court, and that we should sustain that assignment in the application. As we see it, under Head's own testimony, the plaintiff in error here should recover judgment against T. M. Head for the principal, interest, and attorney's fees provided for in the note sued upon.

In view of what we have said, we recommend that the judgments of the trial court and Court of Civil Appeals be reversed, and that judgment be rendered by the Supreme Court in favor of plaintiff in error against T. M. Head for the full amount sued for, principal, interest, and attorney's fees as provided for in the note, the clerk of that court to assess the damages. We further recommend that the costs in all the courts be assessed against the said T. M. Head.

CURETON, C. J. Judgments of the County Court and Court of Civil Appeals both reversed, and judgment rendered for the plaintiff in error, as recommended by the Commission of Appeals.