### DALE v. AKIN et al.
### No. 3384.

Court of Civil Appeals of Texas. Amarillo.
March 26, 1930.

Rehearing Denied April 23, 1930.

Penix & Penix, of Wichita Falls, for appellant.

Kay & Akin and Taylor, Muse & Taylor, all of Wichita Falls, and B. W. Tipton, of Electra, for appellees.

RANDOLPH, J.

The plaintiff, J. W. Akin, brought this suit against Mrs. M. V. Howell, J. W. Howell, Mrs. Mamie Dale, W. P. Smith, J. A. Wise, J. S. Mills, Adah Burge Mills, and Oates Naylor, alleging that on the 14th of January, 1927, the defendants Mrs. M. V. Howell and J. W. Howell executed and delivered to plaintiff their promissory note in the sum of $6,300, payable to the order of plaintiff, and maturing as follows: "$250.00 on April 1, 1928 (of which the receipt is duly acknowledged), $250.00 on October 1, 1928, and $400.00 on the 1st day of each April, and $400.00 on the 1st day of each October, thereafter, until said note is fully paid, and bearing interest at the rate of 8% per annum until paid, the interest being payable monthly on the first day of each month, and stipulating for 10% on the amount of principal and interest unpaid, as attorneys fees, in case suit is brought on same or if placed in the hands of an attorney for collection."

That the $250 due October 1, 1928, and interest since the first day of April, 1928, have not been paid, and this said note provides that failure to pay any installment or any interest installment may, at the option of the holder of said note, mature the same, and plaintiff exercises such option and declares all of said notes due; that, in the deed from plaintiff to Mrs. M. V. Howell and J. W. Howell, the said grantees assumed and agreed to pay an indebtedness secured by deed of trust on the property conveyed therein, to the Mortgage and Bond Company, of New York, in the sum of $6,000, and all interest, thereon, which amounts, together with unpaid interest, bear interest from maturity at the rate of 10 per cent. per annum; that on the

said $6,000 indebtedness there was due and payable on the first of January, 1928, the sum of $350, which said amount bears interest from January 1, 1928, at the rate of 10 per cent. per annum, and which said amount the plaintiff, as second lienholder, was compelled to pay, and did pay, to protect his own interests.

That on the 24th of January, 1927, defendants Mrs. Howell and her husband, J. W. Howell, executed to defendant Mrs. Mamie Dale a deed conveying the property which the plaintiff had deeded to them, and, as a part of the consideration therefor, the said Mrs. Dale assumed the payment of the said $6,000 note, and also assumed the payment of the $6,300 vendor's lien note above mentioned, alleging that the defendants Howells and Mrs. Dale thereby became liable and bound to pay to the plaintiff the sums of money in said notes specified, together with all interest and attorneys fees due thereon; that said notes were given for part of the purchase money of the property here in controversy, which had been conveyed by the plaintiff to the defendant Mrs. Howell on January 14, 1927, and in which deed a vendor's lien was reserved to secure the payment of said notes.

Plaintiff further alleges due conveyance of the property in controversy to W. P. Smith, and Mrs. Alice Naylor, and that Mrs. Alice Naylor conveyed an undivided two-thirds interest therein to Oates Naylor, said deeds being made subject to the indebtedness above mentioned.

That on or about the 14th of January, 1927, and after the deed had been made and delivered by plaintiff to defendant Mrs. Howell, she, joined by her husband, J. W. Howell, executed and delivered to J. A. Wise, a deed of trust to secure the payment of a note for $750, payable in monthly installments, which deed of trust is second to and inferior to the lien held by the plaintiff.

Plaintiff prays for judgment against Mrs. M. V. Howell, J. W. Howell, and Mrs. Mamie Dale, for his debt, interest, attorney's fees, and costs of suit, and against all defendants for a foreclosure of his lien.

Defendant Mrs. Dale filed her third amended original answer, consisting of general and special exceptions, general denial, and special plea, denying that she assumed the payment of the $6,000 and the $6,300 indebtedness, and that the deed reciting such assumption does not speak the truth; further pleading mutual mistake in the recital in said deed; that the said defendant did not assume the payment of said indebtedness, but only bought the property subject to the indebtedness against it, and that defendant Mrs. Dale was in nowise bound for the payment of same; further pleading that she is a widow, not accustomed to dealing in real estate and not accustomed to the language, terms, and conditions in a

deed, and not versed in business affairs; that the representatives of defendants Howell were shrewd business men, accustomed to trading in real estate, and such representatives represented and stated to the defendant Mrs. Dale that the deed made by the defendants Howell did not obligate her to pay the notes described in plaintiff's petition; that, after same were drawn, she could, at any time she saw fit, while she owned said premises, reconvey same, and would not be obligated for the payment of any of the indebtedness described in plaintiff's petition, but that the premises alone stood good for the indebtedness; that said statements were relied on and believed by her, and the same were falsely and fraudulently made for the purpose of inducing and did induce her to accept the deed alleged in plaintiff's petition, to the premises in controversy; that, had she known that said deed, by its terms, as alleged by the plaintiff, obligated her to pay said indebtedness, she would not have made said deal and accepted the deed, but that she implicitly relied upon said representations; that, relying upon said representations, she never read the deed until many months after the deal was closed, and then was not aware of, and did not understand that she had obligated herself to pay said indebtedness.

She then alleges that thereafter she had conveyed the premises to H. Enyart, who assumed the payment of the indebtedness due plaintiff and the mortgage company, and, thereafter, Enyart conveyed the same to one Scott, and that Scott assumed the payment of said notes.

Defendant Mrs. Dale further alleges that the plaintiff has taken possession of the property and is now collecting the rents and revenues of same, and he is thereby estopped from asserting any claim on said notes against said defendant.

Defendant Scott filed his answer, denying that he ever purchased the property from Enyart; and defendant Wise filed his answer and cross-action, setting up his deed of trust and praying for a foreclosure of same, and also alleging the execution of the note for $750 executed by the Howells and Mrs. Dale to him, and alleging that same was for money paid to the plaintiff on the purchase price of the property in controversy.

Defendant Mrs. Dale filed her answer to Wise's cross-action, in which she pleaded that the note sued on by Wise was executed long after the execution of the deed of trust, and that she signed said note at that time and same was without consideration, passing from J. A. Wise to her.

Other pleadings by the various parties herein are not necessary to be set out here.

The case was submitted to a jury upon special issues, as follows:

"Special Issue No. 1. Did the defendant Mrs. Dale understand when she accepted the deed from Mrs. Howell and her husband, that she was not assuming the indebtedness against the property?" which was not answered by the jury.

"Special Issue No. 2. Did Mrs. M. V. Howell understand that Mrs. Dale was not assuming the indebtedness against the property?" This issue the jury answered "No."

The court further instructed the jury that the burden of proof was upon Mrs. Dale to establish the affirmative of the above issues by a preponderance of the testimony, and that, if she has failed to do so, the jury will answer them in the negative.

Upon the jury's answer to issue No. 2, the court rendered judgment—finding that the jury's verdict was that defendant Mrs. Dale had assumed the payment of the notes sued on by plaintiff, and of the notes sued on by Wise in his cross-action, and, further, the court finds that the assumption of the payment of such indebtedness, as shown by the deed, was not the result of a mutual mistake on the part of Mrs. Howell and Mrs. Dale.

The judgment as rendered was in favor of the plaintiff and against Mrs. M. V. Howell, J. W. Howell, and Mrs. Mamie Dale, for the sum of $7,393, with interest on the sum of $6,372.-66 at the rate of 8 per cent. per annum from the date of the judgment, and interest on the sum of $383.10 at the rate of 10 per cent. from the date of the judgment, and interest on the sum of $637.24, attorney's fees, at the rate of 6 per cent. per annum from said date. Also, rendering judgment for a foreclosure of plaintiff's lien on the property in controversy, against all defendants, and in favor of J. A. Wise upon his note and deed of trust, as against the Howells and Mrs. Dale, holding Wise's lien inferior to plaintiff's lien, and ordering Wise's judgment to be paid out of any excess remaining after the payment of plaintiff's judgment; and, further, that defendant Enyart being a nonresident, that the court had no jurisdiction of the cause of action against him, hence, the case against Enyart was dismissed.

The court, by such judgment, disposed of all parties, and from this judgment Mrs. Dale has appealed to this court.

The first ground of error, as alleged by appellant, which we shall consider, is: Did the trial court err in failing to submit to the jury the issue of fraud arising from the alleged representations of the agent of Mrs. Howell and J. W. Howell, in the matter of the sale of the property in controversy by Mrs. Howell and J. W. Howell to Mrs. Dale, in that the alleged false representations claimed to have been made by the agent of the Howells was not submitted to the jury?

We are aware of the rule that one who has by false representations been induced to enter into a contract or agreement cannot be held by the other party to the contract or agreement. This is based upon the proposition that, by reason of such antecedent fraud, such contract never had any existence. Advance-Rumely Thresher Co. v. Higgins (Tex. Civ. App.) 279 S. W. 531–535, and authorities therein cited. But, in the case at bar, the application of the rule is sought to be made to the very instrument in which the liability was created, and not to a false representation as to the subject-matter of the contract. The false representation here charged is one which applies to the binding force of the contract itself, and not to a false representation with reference to the property conveyed.

The facts, as testified to by Mrs. Dale, are substantially as follows: That the contract between the Howells and herself, for the sale of the property in controversy to her, was drawn in the office of Cunningham, the agent of the Howells, and witness thinks Mr. and Mrs Howell were both present. That the parties agreed that the defendant Mrs. Dale would pay the property out if she could, but if something arose which made it impossible for her to pay, she would have the privilege of turning the property back, and that Cunningham told her that would certainly be fair enough to do. She then testified:

"I asked if they wanted to go and see my property and they said they lived near there, and that they knew enough about that country, and they were willing to make the trade without taking the trouble of going to such a long trip; I went to see this property, and so with that understanding that the property stood good for it, we went ahead and entered into the contract; my son did not approve of the trade; he did not like the idea of taking anything that had so much against it. Mr. Cunningham was present when my son said what he did. My son hesitated a long time, and Mr. Cunningham argued with him, and told him the advantage of having property that was close to him, and that was the reason that decided him, I think, but he really did not want anything to do with it; but he said if it did not involve anything else he would go ahead and sign it, and did. Mr. Cunningham told him that it would not involve me, and after he told him that, he went ahead and signed the contract and Mr. G. M. Clark, my son in law, was standing there at the time. I think that the deed was drawn in a day or two after that; I know that he did not lose much time; it was placed in escrow while the titles were examined. I think he notified me and I went to his office and got the deed; he said, 'Well, we have the deeds ready to make the exchange.' "

The deed was turned over to her, and in it she assumed the payment of the notes to plaintiff, to the mortgage company, and to Wise. The contract was silent as to any assumption by her of the said indebtedness,

and her testimony is that the deed was to be made to correspond with the contract.

Mrs. Dale took the deed home with her and laid it on the table with a magazine, and the magazine was put away and she failed to put the deed of record, and she did not in fact know where it was; it had become misplaced and she did not know what she was going to do about it, but later when she was going through some magazines the deed fell out. She had not read the deed until some time after she had recovered it, and that was when she discovered the way the deed was drawn, for her to assume the payment of the indebtedness instead of buying the property subject to the debt. The plaintiff told her, when he found that her deed was not of record, that she must record it. She states that she went to Mrs. Howell and asked her to give her another deed, that the one she had received was misplaced, but witness does not remember that she asked for another deed, so that it would show that she did not assume the debt.

Witness then identified a letter as having been written by her, which is as follows:

"Iowa Park, Tex., Box 83 July 23.

"Mr. J. A. Wise:

"Dear Sir: Your letter rec'd, I am certainly surprised, to think Mr. Carmack did not take care of those payments. I have two or more witnesses, that will testify he made a verbal statement to me in order to make that trade, that he would see that all payments were made to you, as well as the others holding claims on that property. I made the trade, because he assured me that I would not be bothered any more about this property, but he also said he would take up your note if you would make a discount. I told him you would, I know you discounted my last payment $3.00 so I could bring your note down to $500.00 even, as I had agreed to do with them but when it came to the Deed, they had it made to a Mr. H. Enyart of Gould, Okla. this was in Mar. 1928, they also told me Mr. Enyart was responsible for the debt, & he assumed it as I had done.

"It seems he then deeded it direct to Mrs. Naylor of Seymore, and she has not put it on record yet. Judge Aiken & Mr. O. O. Hagar, drove to Seymore to see her Sat. afternoon, to try to get her to do something. She is financially able. Mr. Cunningham & Hagar have both written to Mr. Carmack of Gould to see if he will pay up your notes, and then have her deed this to Mr. Hagar or someone, who will take care of balance on property which is $12,100.00 now.

"They offered it back to me but I refused, as I disposed of my property last Jan. in order to go to Miami, Florida, & go into business with a Sister & Niece who were living there. I have not gone however, as they had a chance to sell out at a good time but I had all my stuff tied up with them. I dont want any property in Wichita but I am sure Mr. Carmack, Enyart or Scott will take care of your notes, as Judge A. & Mr. Hagar are doing all they can. Hagar has ⅙ int. in property now. I think something will be done this week.

"I am Resp. Mrs. Mamie Dale."

As stated above, the false representations charged to have been made do not apply to the subject-matter of the contract, but is attempted to be applied to a term of the contract, which fixed liability on her, Mrs. Dale. She received the deed, as she testifies, without reading it. She negligently misplaced it, and some months later recovered it. She claims that she did not read it at all until she wanted to trade with Enyart. When she discovered it, she made no attempt to repudiate it, but proceeded to sell the property to Enyart and make him assume the indebtedness, "just like she had assumed it."

Under these facts, Mrs. Dale was not entitled to have the question of fraudulent representations submitted to the jury. She does not allege that any fraudulent representations were made by the Howells, or their agent, Cunningham, inducing her to enter into the contract, but her allegation is that she was induced to accept the deed by the representations of Cunningham, that the deed did not make her responsible individually for the debts owing on the land. If she was in ignorance of the fact that the deed made her assume such indebtedness, it was her duty, upon discovering that it did contain such assumption, to repudiate it. The fact that she did not do this, but, after full knowledge of the terms of the deed complained of, she passed the title to the land to Enyart with a like provision in it, is conclusive of the fact that she had assumed the payment of the indebtedness.

"A person who has been injured by the fraud of another may waive his right to maintain an action or counter-claim for the damages sustained, just as he may waive any other cause of action. It is, however, difficult and perhaps hazardous to formulate or to apply general rules as to what will constitute such a waiver, and each case in which the question arises must be considered and disposed of upon its own special facts, the underlying question being one of intent. Notwithstanding the defrauded party may retain what he has received, stand to his bargain, and recover for the loss caused him by the fraud, he cannot maintain an action for the original wrong practised on him where, with full knowledge of all the material facts, he does an act which indicates his intention to stand to the contract and waive all right of action for the fraud. * * *" 27 C. J. page 22, § 135 (2).

See, also, Wells v. Houston, 23 Tex. Civ. App. 629, 57 S. W. 584; McKenzie v. Hamilton, Dallam, Dig. 461; Navarro Publishing Co. v. Fishburn, 2 Posey Unrep. Cas. 587, 593; Hallwood, etc., Register Co. v. Berry, 35 Tex. Civ. App. 554, 80 S. W. 857.

The fact that the plaintiff took possession of the property and collected the rents and revenues therefrom does not preclude his right to foreclose his lien, as the evidence shows that the property was abandoned, and that the plaintiff tried to get the defendant Mrs. Dale to take possession, and she declined to do so. The plaintiff had the right to thus protect his security from waste and deterioration, provided he accounts for the rentals received.

The matters that we have discussed control in the disposition of the case, and we therefore overrule all of appellant's assignments of error and propositions, and affirm the judgment of the trial court.