**O'CONNELL v. LOCKHART et al.**

No. 3227.

Court of Civil Appeals of Texas. El Paso.

Sept. 19, 1935.

McNees & Roberts, of Dallas, for appellant.

Weeks, Hankerson & Potter, of Tyler, for appellees.

PELPHREY, Chief Justice.

On March 3, 1933, H. L. Lockhart of Gladewater, Tex., John F. O'Connell of Boston, Mass., and Arthur J. Rheinhart of Dallas, Tex., entered into a contract relative to the sale of the capital stock and all the physical properties, except the stocks of crude, refined, and lubricating oils on hand, of the Gladetex Refining Company, a Texas corporation.

In this contract Lockhart, who represented himself as controlling and having the authority to sell, agreed to sell the capital stock and physical properties of the corporation to O'Connell and Rheinhart for a consideration of $12,500 to be paid by the execution and delivery of seven promissory notes aggregating that amount and payable to Mrs. Alice B. Lockhart, the wife of Lockhart.

The contract contained a provision that the notes should be collected through the Everett Banking Company of Gladewater, Tex., and that the banking company should deliver the capital stock to O'Connell and Rheinhart as follows: One-third when one-third of the consideration had been paid, another one-third upon the payment of another one-third of the consideration, and the remaining one-third when the total consideration had been paid.

As security O'Connell and Rheinhart agreed to execute and deliver a chattel mortgage on the certificates of stock and the physical properties.

On April 4, 1933, a chattel mortgage on the certificates of stock was executed but signed by Rheinhart alone, and a chattel mortgage on the physical properties

signed by John F. O'Connell as president of the Gladetex Refining Company and attested by Joseph E. Carroll as secretary.

The first note and a part of the second note were paid, and this suit was instituted by the Lockharts to collect from O'Connell the remainder, to foreclose the chattel mortgages, and to collect the sum of $2,870 alleged to be due for certain oils and greases alleged to have been sold to O'Connell and Rheinhart on March 28, 1933.

In their petition the Lockharts alleged that Rheinhart had been discharged from all liability on the notes by the mutual agreement of all parties.

O'Connell answered by a general demurrer and a general denial, denied that he executed the chattel mortgages, and alleged that there had been an abandonment of the written contract and an oral agreement entered into that he was not to execute any mortgage and that the stock was to be put in escrow giving him and Rheinhart an option to purchase it and that the notes were to be paid from profits arising from the operation of the refinery and that he would not be personally obligated for their payment.

O'Connell further alleged misrepresentations on the part of H. L. Lockhart and asked for rescission of the contract and for damages. The Lockharts in supplemental petition alleged that if there had been any misrepresentations, that O'Connell had waived same by express oral waiver and by continuing to perform and accept benefits under the contract.

By trial amendment O'Connell elected to stand upon his right of rescission and abandoned his cross-action for damages.

O'Connell requested the submission of numerous special issues, but such request was refused, and the court rendered judgment against him for the amount due on the notes and foreclosing the chattel mortgage on the capital stock of the Gladetex Refining Company. O'Connell's motion for a new trial was overruled, and he has perfected an appeal.

## Opinion.

Appellant in his brief presents four assignments of error and four propositions thereunder, but they all raise the question of the correctness of the trial court's action in refusing to submit the requested issues and in rendering the judgment he did.

Appellant in this connection asserts that his pleadings and the evidence raised issues as to whether there was a change in the contract as pleaded by appellees and whether there were such false and fraudulent representations made as to the condition and value of the refinery and the value of the stock as would justify a rescission of the contract. Appellees counter with the contention that the alleged verbal agreement that the notes were to be paid out of the profits of the business is shown by the evidence to have been made before the trade was reduced to writing and was, therefore, merged into the written agreement, and that, if misrepresentations were made to appellant as to the condition of the refinery, he discovered them immediately upon taking possession thereof and condoned any fraud which may have been perpetrated by his continued performance of the contract.

Appellant pleaded that Lockhart drafted a written contract and the notes, and that after the contract had been signed and the notes executed, the written contract was abandoned orally and a different agreement entered into.

Appellant's testimony on this matter reads:

"Q. Now then, the original agreement that you made about the purchase of this refining plant, Mr. O'Connell, you stated a moment ago that you hadn't that agreement, but I am talking now about the original agreement that was had, did that agreement have this provision: 'The above described notes will also be collected through the Everett Banking Company of Gladewater, Texas. When the second parties have paid one-third of the cash consideration hereinabove mentioned, the Everett Banking Company shall deliver one-third of the capital stock of said corporation to the second parties; and when an additional (one-third) of the consideration has been paid, said Bank shall deliver an additional one-third of the stock of said corporation to second parties; and upon the completion of the payment of the consideration, hereinabove mentioned, said bank shall deliver the balance of the capital stock of said corporation to the second parties.' Now that is the first agreement that you had? A. Yes. That was part

of the first agreement, but that was originally changed orally; the original agreement was made that way, and it was orally changed at a later date.

"Q. The original agreement was reduced to writing and that changed? A. Yes, sir.

"Q. But that was the substance of the original agreement? A. Yes.

"Q. And that was the agreement that you say you later abandoned? A. Yes, sir.

"Q. Now then when, if later, that you made this change, when did you do that? A. When Mr. Lockhart came on the second visit and had these papers with him, he demanded other assurance than the original agreement which was—

"Q. Now, then, was that before or after you had taken possession of the plant? A. Just before.

"Q. Just before? A. Yes.

"Q. Well, now then, was this change that you say was made later, was that really made before the written agreement was signed? A. Before the written agreement was signed.

"Q. So you were mistaken when you say that agreement was made later and the original agreement was abandoned? A. I mean later in our preliminary conversations before the signatures were made.

"Q. Now you have stated in this deposition, Mr. O'Connell, that your first agreement were that—was that it had that provision in it about the mortgage on the stock of this company till all of this was paid for? A. Yes.

"Q. And you say 'We later abandoned that agreement'? A. Yes, before.—

"Q. Now then, what do you mean, you had an agreement once and you later abandoned it and now then you say before you did anything you changed it. A. I mean by that, Mr. Potter, later, before we signed any agreement, because Mr. Lockhart had insisted upon having additional assurance, and we refused, that is why it fell through in regard to this contract and those other conditions.

"Q. Then you made that contract before you signed the written agreement? A. Before we signed the written agreement."

It is clear that there is a variance between the change in the contract pleaded and that proved, and there being no proof to support the change alleged, appellant is not entitled to a rescission on that score. Moreover, if the agreement was changed but the contract containing the original provision was later signed, the written contract must control.

The misrepresentations upon which rescission is sought were: (1) That corporation earned $33,000 in the prior year; (2) that the refinery could be fired up and started to producing gasoline in one day; (3) that it was in good running condition; (4) that it was a gold mine; (5) that the repair of an elbow on a pipe at a cost of not more than $100 was the only repair necessary.

There is evidence in the record that Lockhart told both O'Connell and Rheinhart that the refinery had earned something over $30,000 in a prior year, but there is absolutely no evidence that such statement was false.

It also appears that after the falsity of the other representations was discovered, part of the purchase price was paid; that the plant was operated by O'Connell and Rheinhart and later by O'Connell alone; and that O'Connell agreed to the discharge of Rheinhart on the notes. Ordinarily the question of whether a party has waived the fraud of the opposing party is one for the determination of a jury, but where, as here, the facts show that he continues, after a discovery of the fraud, to treat the property as his own, makes payments on the purchase money, and contracts with his vendor in connection with the property, a court is authorized to declare, as a matter of law, that the right of rescission has been waived. Shappirio v. Goldberg, 192 U. S. 232, 24 S. Ct. 259, 48 L. Ed. 419; Wells v. Houston, 23 Tex. Civ. App. 629, 653, 57 S. W. 584; Hallwood Cash Register Company v. Berry, 35 Tex. Civ. App. 554, 80 S. W. 857; Luckenbach, v. Thomas (Tex. Civ. App.) 166 S. W. 99; Winters v. Coward et al. (Tex. Civ. App.) 174 S. W. 940.

The facts above recited being established by the evidence of the appellant, we find no error in the trial court's action and conclude that the judgment should be in all things affirmed.