**C. V. HILL & CO., Inc., v. PARKER.**

No. 14139.

Court of Civil Appeals of Texas.
Fort Worth.

Nov. 22, 1940.

John L. Poulter, of Fort Worth (appearing on appeal only) for appellee.

BROWN, Justice.

Appellant here, C. V. Hill & Co., Inc., acting through one H. A. Padgett, who was handling appellant's products, sold a certain meat ice box and equipment connected therewith to appellee, W. E. Parker, and after the sale was made—which sale transaction was oral since no written contract of sale was pleaded, or introduced in evidence—Parker executed a chattel mortgage on the personal property to the seller—appellant—to secure the payment of the promissory notes which represent the purchase price.

Parker did not pay for the equipment and appellant brought suit on the deferred payment notes, and prayed for a foreclosure of its mortgage lien, and sequestrated the property.

Appellee Parker answered, alleging that Padgett orally represented that the property was new, when in fact it was used equipment; that it was defective and would not preserve fresh meats and that it was not suitable for the purposes for which it was sold, and alleged special damages occasioned by losses sustained through the defects in the machinery; and alleged that he notified the parties of the unsatisfactory conditions.

Appellant sought to relieve itself of the representations alleged to have been made by Padgett by pleading that Parker cannot vary the terms of the written contract sued upon, and more especially because of the language used in the chattel mortgage which we here quote. After setting forth the description of the personal property and the balance of the unpaid purchase price, the mortgage provides:

"To have and to Hold, said chattels and all and any replacements thereof and additions thereto unto said mortgagee herein and unto mortgagee's heirs, executors, administrators and assigns and to mortgagee's and their sole use forever. And the mortgagor herein for said mortgagor and for the heirs, executors, administrators and assigns of said mortgagor does hereby covenant to and with said mortgagee and the heirs, executors, administrators and assigns of said mortgagee, that said mortgagor is lawfully possessed of said chattel as mortgagor's own property; that the same is free from all encumbrances and that mortgagor and the executors, admini-

D. A. Webb, of Fort Worth, for appellant.

strators and assigns of the mortgagor will warrant and defend the same to said mortgagee and to the heirs, executors, administrators, and assigns of said mortgagee against the lawful claims and demands of all persons, and that said chattels shall not become part of the realty no matter how annexed thereto, and to maintain fire insurance payable to mortgagee sufficient to protect mortgagee against loss or damage of said chattel and mortgagor further covenants and agrees for himself, his heirs, executors, administrators and assigns that said chattel shall remain at No. 4605 Camp Bowie Street, Fort Worth, Texas, and that he will not remove or attempt to remove or permit the same to be removed therefrom, nor dispose of, encumber or misuse said chattels, nor permit the same to be disposed of, encumbered or misused. And mortgagor and the executors, administrators and assigns of mortgagor do further covenant and agree to promptly pay when due all taxes, license fees or other public charges that may be levied against or upon said chattels and to satisfy any and all liens that may be assessed upon or against the same.

"Provided, nevertheless, that if the said mortgagor and executors and administrators of mortgagor shall well and truly pay unto said mortgagee and to the executors, administrators and assigns of said mortgagee the sum of $1,195.00, balance of purchase money, evidence by a series of promissory notes of even date herewith, executed by the mortgagor to the order of the mortgagee, payable in equal consecutive monthly instalments of $49.79 and $49.83 each, and with interest from date payable monthly on unpaid balances, at the rate of ———— % per annum, and with interest from maturity at the highest lawful rate, the first instalment payable on the 25th day of May, then this mortgage is to be void, otherwise to remain in full force and effect.

"And provided further, that it shall be lawful for the said mortgagor to retain possession of said chattels and at mortgagor's own expense to keep and use the same until said mortgagor or the executors or administrators or assigns of said mortgagor shall make default in the payment of any of the instalments above specified, or until the breach of any of the covenants expressed herein. No waiver or condonation of any breach or default shall constitute a waiver of future breaches or defaults. And the said mortgagor does hereby covenant and agree that in case default shall be made in the payment of the instalments aforesaid, or any of them according to their tenor, or any of the covenants expressed herein, or whenever the mortgagee shall deem the debt insecure, or should any surety company on any bond guaranteeing the performance of any of the mortgagor's obligations hereunder, or indemnifying the holder of said notes against loss through conversion, or otherwise, desire to withdraw from said bond, all of the unpaid instalments shall at the option of the holder hereof, without notice of said option to any one, become at once due and payable and the then holder of said notes shall thereupon have the right to take immediate possession of said chattels and for that purpose may, with or without legal process, enter upon or into any premises where the said chattels or any part thereof may be found, and take possession thereof, and remove the same to such other place as it may deem most safe and convenient, and at such time as may be deemed best by such holder, at the risk and expense of mortgagor and reserving the right to bid upon such sale, sell and dispose of said chattels or any part thereof either where the mortgagor's place of business is located or such other place to which said property may have been removed, either at private sale or public auction, in bulk or in any parcels and if at public sale after giving five (5) days' notice by written notice to be posted in three public places in the city, village or township in which said chattels may be offered for sale, and out of the money arising from such sale there shall first be paid the expenses of such seizure, holding, removal, repairing and sale, including reasonable attorney's fees; second, all sums then unpaid, both principal and interest on said notes; and the balance or surplus money, if any, shall be paid to mortgagor or the legal representative of mortgagor. If the proceeds of such sale be insufficient to pay such costs, charges, expenses and unpaid balance, mortgagor agrees to pay the deficit.

"Undersigned agrees that the mortgagor shall not be responsible for spoilage of perishable food products during and after installation of refrigerated equipment and agrees to provide, at his expense, a suitable place for the storage of the said food products.

"Upon the breach of any of the covenants expressed herein, mortgagor hereby confers irrevocable authority upon any attorney at law to appear for him in any court, waive the issue and service of process and confess a judgment against him in favor of the holder hereof for such amount as may appear to be unpaid upon the promissory notes of even date herewith given in evidence of the balance due hereunder, together with costs and attorney's fees and to release all errors and waive all rights of appeal.

"The guarantees embodied in this contract are not binding upon the Seller unless all payments due under the terms of this contract are paid up to and including the date of any claim made by Purchaser under said guarantee.

"If, pursuant to any warranty or guaranty herein contained, or for any other reason whatsoever, the buyer asserts any claim, or sustains any loss or damage whatsoever, as a result of, or arising out of, any defect in the chattels herein described, the seller shall be required only to repair such defect, and to put such chattels in good working condition, and any claim for damages shall be accordingly restricted, and the seller shall not, otherwise, be liable for any damages, consequential or otherwise, by reason of such defect, to the buyer or to any third person.

"It is agreed that this mortgage shall not be countermanded; that it covers all agreements between the parties hereto relative to this transaction; that you shall not be bound by any representation or promises of any agent not embodied herein; that any if made, are hereby waived and shall in no way affect this agreement, but that all terms and statements are herein merged or agreed to be abandoned. All injury to articles caused by improper use shall be at the loss of mortgagee and the guarantee of mortgagor shall not apply to such injury. The receipt of duplicate hereof is hereby acknowledged. In the event of loss of articles by fire, flood, theft or otherwise, the entire loss of balance of rent herein provided for shall fall upon the mortgagee if not so insured.

"It is expressly agreed that this writing shall bind the heirs, executors, administrators and assigns of the respective parties and shall be effective upon acceptance by the mortgagee in the space provided below.

"In witness whereof, said mortgagor has hereunto set his hand and seal this 5th day of April, 1938.

"W. E. Parker (seal)
"4605 Camp Bowie Street
"Witness: H. A. Padgett.
"Accepted: April 11, 1938, C. V. Hill & Company, Inc.
"Earl J. Kressler,
"Secretary."

Appellant further pleaded that Parker kept and used the equipment for several months and is therefore estopped from pleading either fraud in the inception of the contract, or cancellation and rescission.

The cause was tried to a jury and in response to special issues the jury found: (1) that in order to induce Parker to purchase the equipment, Padgett stated to him that it was new; (2) that Parker believed the statement; (3) that Parker would not have bought the equipment but for such representations. These issues were requested by the defendant, and were given in connection with the main charge, wherein the jury found: (1) that Padgett "was acting for and in behalf of and under the authority of the plaintiff, C. V. Hill & Co., Inc."; (2) that the equipment was wholly unfit for the purposes for which it was sold; (3) that it was substantially unfit for the purposes for which it was sold; (4) that the defective condition of the equipment caused unusual shrinkage and discoloration of the meat kept in it; (5) that $210 would fairly and reasonably compensate Parker for the loss sustained by him on account of the shrinkage and discoloration of the meat; (6) that Parker demanded that the plaintiff take the equipment back; (7) that the demand was made within a reasonable time after the equipment was placed in the store.

Appellant (and plaintiff below) presented a motion for judgment notwithstanding the verdict, and urged the trial court to disregard the findings made by the jury, including the findings of special damages sustained by the plaintiff. The trial court declined to render judgment in toto for the plaintiff, but did decline to give the defendant judgment for his special damages as found by the jury, and rendered judgment that the plaintiff take nothing by reason of its suit on the notes and mortgage lien, and cancelled the same.

From this judgment the plaintiff has appealed, and although there are more than

sixty paragraphs in the motion for a new trial, only seventeen assignments of error are found in the brief.

The first assignment of error contends that the trial court erred in not sustaining plaintiff's general demurrer urged against the defendant's answer and cross-action. This assignment of error is bottomed on the theory that plaintiff's cause of action is brought upon a written contract and that defendant's pleading wholly fails to set up fraud, accident or mistake, and it therefore "states no defense or cause of action against the contract in writing."

We do not think that this suit presents such a question as is presented where the contract of sale and the chattel mortgage lien are all embodied in the same instrument.

As we read this record it occurs to us that the sale was made orally and that the promissory notes were executed in pursuance to the sale so made, and the chattel mortgage was executed to secure the payment of the promissory notes. The chattel mortgage does not pretend to be a bill of sale, or a contract to sell. It is designated at the very top of the instrument, "Chattel mortgage", and it purports, from its very beginning, to convey unto the mortgagee the chattels to secure the unpaid purchase price of same.

Analyzing the language used in this chattel mortgage, we conclude that the provision, "It is agreed that this mortgage shall not be countermanded; that it covers all agreements between the parties hereto relative to this transaction; that you shall not be bound by any representation or promises of any agent not embodied herein; that any if made, are hereby waived and shall in no way affect this agreement, but that all terms and statements are herein merged or agreed to be abandoned", does not preclude the mortgagor from pleading any breach of warranty that was made at the time of the sale orally, or from pleading failure of consideration, or false and fraudulent statements inducing the sale.

Although this mortgage makes some mention of "any warranty or guaranty herein contained", an examination of the chattel mortgage discloses that there is neither warranty or guaranty embodied therein.

We confess that we have never seen a similar instrument. We have seen many where the bill of sale reserved title in the seller until the purchase price was paid, and many where the bill of sale contained a mortgage lien expressly given to secure the payment of the purchase price, but here is a plain, straight-forward chattel mortgage, on property purporting to belong to the mortgagor, to secure the balance of the purchase price owing to the mortgagee.

We cannot give the force and weight to the quoted portions of the mortgage, on which appellant relies, that we would give if this instrument were a bill of sale and mortgage incorporated in one instrument.

This instrument does not pretend to say that by it the mortgagee purports to sell the described chattels to the mortgagor.

We think that there are several ambiguous and uncertain provisions in the chattel mortgage.

We do not believe that the pronouncements in Avery Co. of Texas v. Harrison Co., Tex.Com.App., 267 S.W. 254, and relied upon by appellant controls the instant suit, nor do we believe that our conclusions are at variance with the holdings in Distributors Inv. Co. et al. v. Patton, 130 Tex. 449, 110 S.W.2d 47, likewise by the Commission of Appeals.

There was no error in overruling the general demurrer urged against the defendant's answer.

The second and third propositions urged are asserted to be germane to appellant's fifth, sixth, seventh, eighth, ninth, tenth, eleventh and twelfth assignments of error. These contend that loss of expected profits hoped to be realized from a new business venture is too speculative to constitute a proper measure of damages, and that such loss which resulted from the acts of the party claiming them is an improper measure of damages.

We believe that the portions of the defendant's pleading where he seeks to recover for lost profits should have been stricken when excepted to, as was done.

Appellant asserts that his fourth proposition is germane to his thirteenth, fourteenth, fifteenth, sixteenth and seventeenth assignments of error. This proposition contends that when Parker accepted all of the benefits of the contract, by continuously using the equipment for a period of approximately eight months (until suit was brought and the property sequestrated), he has, as a matter of law, waived

any right of cancellation and rescission that he may have had.

We believe that there is merit in the contention. Such cases as J. B. Colt Co. v. Head, Tex.Com.App., 292 S.W. 198, seem to so hold.

We are of opinion that this cause has been tried upon the wrong theory, and that the defense, if any such exists, must be bottomed upon the difference, if any, between the contract price (the value of the property as represented by the seller) and the actual value of the property which was delivered to the buyer. Texas Harvester Co. v. Wilson-Whaley Co., Tex.Civ.App., 210 S.W. 574, writ refused.

We deem it unnecessary, in the view we take of the case, to discuss the remaining propositions.

For the reasons given the judgment of the trial court is reversed and the cause is remanded.